**John N. HASWELL, M.D.,
Appellant–Defendant,**

v.

**Donna J. KRAMER and Brian L.
Kramer, Appellees–Plaintiffs.**

No. 49A02–9503–CV–140.

Court of Appeals of Indiana.

Dec. 11, 1995.

Transfer Denied May 15, 1996.

---

Danny E. Glass, Fine & Hatfield, Evansville, for Appellant.

Terry Pehler, Caplin, Pehler, Park & Tousley, a Professional Corporation, Indianapolis, for Appellees.

**OPINION**

FRIEDLANDER, Judge.

Dr. John N. Haswell is before this court on a permissive interlocutory appeal in which he argues that the trial court erred in denying his motion for summary judgment as to a medical malpractice claim action brought against him and other health care providers by Donna J. and Brian L. Kramer (collectively referred to as the Kramers).

We affirm.

The relevant facts reveal that the Kramers were residents of Vincennes. Dr. Haswell was Donna's obstetrician/gynecologist who rendered prenatal care and delivered the Kramers' first two children. Dr. Haswell continued to give Donna medical advice in 1987, when she became pregnant with Dennis, the Kramers' third child. Dr. Haswell encouraged Donna to have a vaginal birth after cesarean (VBAC) and referred her to Dr. Mary Soper, an Indianapolis physician to perform the procedure. Dr. Haswell promised to remain as Donna's physician in Vincennes and agreed to render emergency assistance if necessary.

On April 17, 1988, five days prior to Donna's estimated due date, the Kramers conferred with Dr. Haswell. They discussed Donna's physical condition and discovered that Donna had been two centimeters dilated for the past two weeks. Emergency procedures were also discussed where it was decided that Donna was to go to Good Samaritan Hospital (Good Samaritan) in Vincennes in the event labor progressed too rapidly.

On April 30, 1988, Donna experienced a sharp pain and became unsure of her labor. Brian telephoned Dr. Haswell and was only able to reach his answering machine. Brian left a message explaining that they were on their way to Good Samaritan. Dr. Haswell was out of town and had not made arrangements for an "on call" physician. At the emergency admissions desk, the Kramers informed hospital personnel that Dr. Soper was Donna's obstetrician and that Dr. Haswell was her secondary local physician. Dr. Ralph J. Jacqmain was on call and he did not perform cesarean section births or VBAC's. While Donna was at Good Samaritan, it was discovered that neither Dr. Soper nor any other Indianapolis physician had privileges at that hospital. A patient could not be admitted to Good Samaritan without an attending physician. Donna was then taken to India-

napolis by ambulance. It was discovered that Donna's uterus was ruptured beyond repair. Shortly after birth, Dennis died and a hysterectomy had to be performed in order to save Donna's life.

On April 30, 1990, the Kramers filed a proposed complaint for medical malpractice with the Indiana Department of Insurance against Good Samaritan, Dr. Jacqmain, Dr. Soper, Dr. Haswell, and Dr. Scott Deasy, a physician who practiced with Dr. Soper. While this claim was pending, Dr. Haswell interjected a motion for summary judgment in Greene Superior Court. The motion was denied, and the trial court determined that issues remained for the jury as to whether Haswell should have provided Donna with care that would have prevented the rupture of her uterus.

On February 9, 1993, the medical review panel issued an opinion which provided in relevant part as follows:

"1. With respect to the defendants, J. Scott Deasy, M.D., Mary Soper, M.D., and John N Haswell, M.D., the evidence does *not* support the conclusion that the defendants failed to meet the applicable standard of care as charged in the Complaint.
2. With respect to the defendant, Good Samaritan Hospital, the evidence supports the conclusion that the defendant failed to comply with the appropriate standard of care as charged in the Complaint. However, the panel finds that there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury as to the information given to the Kramers concerning the availability of a Cesarean section within a reasonable time frame.
3. With respect to the defendant, Ralph J. Jacqmain, M.D., the evidence supports the conclusions that the defendant failed to comply with the appropriate standard of care as charged in the complaint."

*Record* at 18 (emphasis in original).

On May 19, 1993, the Kramers filed a complaint in Marion Superior Court Room 5 (Superior 5) against the above-named defendants for medical malpractice. Count one was for the alleged injuries and damages

Donna and Dennis suffered, and count two involved Brian's damages for loss of consortium, medical expenses, and lost income. A settlement agreement was executed in June, 1993, as to all parties involved in the litigation except Dr. Haswell. As part of the agreement, the Kramers reserved the right to proceed against the Patient Compensation of Indiana (the Fund) to collect additional compensation. The Kramers subsequently executed a release and entered into a settlement agreement with the Fund. This agreement pertained to the incident involving Dennis's death and was filed as part of a separate action in Marion Superior Court Room 2. The trial court approved this settlement agreement and authorized payment in the amount of $325,000 to the Kramers from the Fund. On July 28, 1993, Superior 5 entered an order dismissing all defendants except Dr. Haswell.

On January 4, 1994, Dr. Haswell filed a motion for summary judgment maintaining that all of the Kramers' claims for medical malpractice had been satisfied and paid through the Fund and that any additional payments would constitute double recovery for the Kramers. Dr. Haswell's motion was denied on January 25, 1995.

Dr. Haswell appeals and presents several issues which we have consolidated as one:

Did the trial court err in denying Dr. Haswell's motion for summary judgment?

Oral argument was held in Indianapolis on September 28, 1995.

■ Inasmuch as Dr. Haswell is appealing from the denial of his motion for summary judgment, he bears the burden of demonstrating that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Jordan v. Deery* (1993), Ind., 609 N.E.2d 1104; *Lexington Ins. Co. v. American Healthcare Providers* (1993), Ind.App., 621 N.E.2d 332, *trans. denied.* When reviewing the trial court's ruling on a motion for summary judgment, we consider the evidence designated to the trial court by the parties in the light most favorable to the nonmoving party. *Lexington Ins. Co., supra.*

The extent of the Kramers' ability to recover from Dr. Haswell is defined by Indiana's Medical Malpractice Act (the Act).[1] Dr. Haswell contends that under the Act, an occurrence includes *all* alleged acts of malpractice resulting from, or contributing to, an injury or death and that the Kramers have received full recovery for their injuries. Dr. Haswell points to the language of IC 27–12–14–3(a) in support of his position:

"(a) The total amount recoverable for an injury or death of a patient may not exceed five hundred thousand dollars ($500,000) except that, as to an act of malpractice that occurs on or after January 1, 1990, the total amount recovered for an injury or death may not exceed seven hundred fifty thousand dollars ($750,000).

(b) A health care provider qualified under this article is not liable for an amount in excess of one hundred thousand dollars ($100,000) for an occurrence of malpractice.

(c) Any amount due from a judgment or settlement that is in excess of the total liability of all liable health care providers, subject to subsections (a), (b), and (d), shall be paid from the patient's compensation fund under IC 27–12–15.

(d) If a health care provider qualified under this article admits liability or is adjudicated liable solely by reason of the conduct of another health care provider who is an officer, agent, or employee of the health care provider acting in the course and scope of employment and qualified under this article, the total amount that shall be paid to the claimant on behalf of the officer, agent, or employee and the health care provider by the health care provider or its insurer is one hundred thousand dollars ($100,000). The balance of an adjudicated amount to which the claimant is entitled shall be paid by other liable health care providers or the patient's compensation fund, or both."

The amount paid to the Kramers from the Fund pursuant to the June 28, 1993 settlement agreement was authorized by IC 27–12–15–3(5) which provides in relevant part as follows:

"If the commissioner, the health care provider, the insurer of the health care provider, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, the court shall, after hearing any relevant evidence on the issue of claimant's damage submitted by any of the parties described in this section, determine the amount of claimant's damages, if any, in excess of the one hundred thousand dollars ($100,000) already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and make a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established."

■ While the parties executed a release relating to the claims filed in Superior 5, the subsequent order of dismissal entered by the trial court provided that the dismissal "[did] not affect Plaintiffs' claims against the Defendant, John N. Haswell, M.D." *Record* at 74. A release is a contract that releases only those persons intended to be released. *Huffman v. Monroe County Comm. School Corp.* (1992), Ind., 588 N.E.2d 1264. The settlement agreement executed by the parties specifically provided that the action pending in Superior 5 was dismissed with prejudice as to "Defendant Hospital, Defendant Physician, Soper and Deasy with the suit continuing as to Haswell." *Record* at 61.

■ The petition the Kramers filed in Superior 2 sought damages from the Fund in excess of the amount settled with those health care providers described in the settlement agreement. The trial court then issued an order regarding the claim made against the Fund pursuant to a settlement agreement in which the Kramers promised to:

"Fully release, acquit, and forever discharge the commissioner, the Department of Insurance, and the Patient's Compensation Fund, their agents, servants, employ-

---

1. Ind.Code 27–12–1 *et seq.*

ees, representatives, attorneys, officials, and/or any other person or entity from any and all claims, demands, or causes of action which now exist or which may exist in the future on account of or in any way growing out of any and all known or unknown, foreseen or unforeseen bodily and/or personal injuries and damages *arising from the incident.*"

*Record* at 53, 54 (emphasis supplied).

Inasmuch as there were two superior court claims pending, it is apparent that the Fund and the Kramers agreed to dismiss only the claim that was pending against the Fund, and not Dr. Haswell. The record reflects that Dr. Haswell was not a party to any settlement agreement involving the other health care providers or the Fund.

While Dr. Haswell claims that the Kramers alleged only a single act of malpractice or injury which precludes them from any additional recovery, the complaint the Kramers filed provides in relevant part as follows:

"8. That on or about April 30, 1988, the Defendants undertook to render medical care and assistance to Mrs. Kramer and Dennis, the son of Mr. and Mrs. Kramer, and then and there it became the duty of the Defendants to exercise reasonable care to see that Mrs. Kramer and Dennis obtained proper treatment.

. . . . .

11. That as a direct and proximate result of the acts, negligence and malpractice of the Defendants, Dennis died and Mrs. Kramer has endured pain, mental anguish, permanent loss of bodily function, including traumatic sterilization, incurred medical expenses and Mrs. Kramer will be required in the future to endure pain and mental anguish."

*Record* at 14, 15.

The settlement agreement and release executed between the Fund and the Kramers referred only to the following incident: On or about April 30, 1988, *Dennis Kramer* sustained injuries which resulted in his death as a proximate result of the conduct of Good Samaritan Hospital and Ralph J. Jacqmain, M.D. ('incident'). *Record* at 51–52.

We reject Dr. Haswell's argument that the Kramers' request for payment from the Fund constitutes a representation by them that recovery has been satisfied as to *all* liable parties. In *Dillon v. Glover* (1992), Ind.App., 597 N.E.2d 971, *trans. denied,* this court upheld an award of damages granted to the personal representative of the decedent's estate as a result of a medical malpractice action instituted against a physician for an alleged negligent reading of an x-ray. The personal representative had filed a wrongful death action against the health care providers and the only damages she sought from the Fund were for those as a result of the loss of the decedent's love, care, and affection. On February 9, 1993, our supreme court denied transfer in *Dillon* and issued an order denying transfer which provides in relevant part as follows:

"[W]hen a health care provider settles with a claimant whose complaint alleges that the provider's negligence caused a death, liability for the death is considered admitted and established under provisions of the Medical Malpractice Act, Indiana Code, Section 16–9.5–4–3. Subsequent litigation against the Patient's Compensation Fund is therefore limited to valuing losses associated with the death. The Fund is not entitled to litigate whether the provider's negligence caused the death."

*Record* at 187.

The record before us reflects that the Kramers entered into a settlement agreement only in regards *to the death of Dennis.* The order denying transfer in *Dillon* briefly addressed a situation involving a claim brought by a party, such as Donna, who also sustained a personal injury: "This rule on liability and damages proximately caused by a provider does not necessarily work the same way in the cases of claimants who survive their illnesses. We leave those questions for subsequent cases." *Record* at 187.

In *Miller v. Memorial Hospital of South Bend* (1994), Ind.App., 645 N.E.2d 631, this court determined that the plaintiff was entitled to only one recovery under the Act for a single injury, even though there was an attempt to distinguish different acts of alleged malpractice. In *Miller,* the plaintiff-child,

through his parents, filed a complaint against the defendant-hospital and an attending physician claiming that the defendants rendered negligent treatment during the prenatal period. He also alleged that the negligent acts on the part of the hospital and physician were the cause of permanent injury and future pain and suffering. The trial court awarded the plaintiffs $100,000 from the physician and an additional $400,000 from the Fund. The defendant-hospital then moved for summary judgment which the trial court granted. The plaintiff appealed, claiming that a genuine issue of material fact existed as to whether the child suffered two separate and distinct injuries—a prenatal injury caused by the physician and a second postnatal injury caused by the hospital.

This court affirmed and observed that

"a plaintiff may recover only once *no matter how many acts of negligence may have contributed to his injury. See Bova* [*v. Roig* (1992), Ind.App., 604 N.E.2d 1]. ... Dr. Shanklin's affidavit states that [the hospital] negligently caused a postnatal injury which was a separate and distinct injury from the injury allegedly cause[d] by Dr. Schiller during the prenatal period. Despite the questions which may arise as to whose acts were attributable to the severity of *Nicholas's injury*, as a matter of law Miller suffered only one injury. The fact that more than one act of malpractice may have combined and contributed to *his* injury, is of no effect. *The Act, which places a $500,000 cap on recoveries, applies to each injury and not to each act of malpractice.* Dr. Shanklin's attempt to distinguish the alleged acts of malpractice—prenatal and postnatal—is to no avail. Miller may recover only up to the $500,000.00 statutory cap for brain injury. *See Bova*, 604 N.E.2d at 2–3 (recovery limited to Act's $500,000.00 statutory maximum despite plaintiff's claim that two separate acts of malpractice, one act of malpractice occurring during the surgery and one act during postoperative care, combined to cause his blindness)."

*Id.* at 634 (emphasis supplied).

While *Miller* limited the plaintiff's recovery because there was only one injury, there is nothing in the act precluding recovery for separate injuries that are sustained as a result of more than one act of malpractice. IC 27–12–14–3(a) provides that "the total amount recoverable for *an injury or death* of a patient may not exceed five hundred thousand dollars ($500,000)." (Emphasis supplied). As alleged in the complaint, the Kramers suffered injury as a result of Dennis's death *and* an injury resulting from Donna's sterilization and loss of uterus which were caused by Dr. Haswell's negligence.

It is apparent under the Act that if all liable health care providers settle for a particular injury or settle for a *single occurrence of malpractice*, the Fund pays the balance, if any, through an excess judgment claim. The language of the Act does not prevent a recovery from Dr. Haswell, who was allegedly responsible for separate injuries that arose from distinct acts of malpractice.

The Kramers drafted the complaint in a manner which alleged a cause of action against the physicians regarding the care rendered to Dennis *and* to the alleged negligent care provided by Dr. Haswell to Donna relating to the rupture of her uterus and subsequent sterilization. As discussed above, the Greene Superior Court had already denied Dr. Haswell's motion for summary judgment regarding the alleged negligent care of Donna. This order provided in relevant part as follows:

"4. There are questions of fact concerning whether Dr. Haswell should have encouraged Donna Kramer to have a VBAC under the circumstances then existing. There are also questions of fact as to whether there was a continuing doctor-patient relationship existing between Dr. Haswell and Donna Kramer on April 30, 1988. These questions include evidence that Dr. Haswell led Donna Kramer and other physicians to believe that Dr. Haswell would be available as her local physician for medical backup care. Further, there is evidence that other physicians believed and relied on these alleged representations. Related issues in dispute include whether Dr. Haswell should have provided Donna Kramer or the Good Samaritan Hospital with names of a surgeon

who could manage Donna Kramer during an emergency when Dr. Haswell was not available."

*Record* at 100–01.

As the order indicates, the medical treatment Dr. Haswell provided relates to the negligent treatment of Donna. She sustained a separate injury which should be litigated separate and apart from the settlement pertaining to Dennis's death.

In light of the foregoing, we conclude that the trial court properly denied Dr. Haswell's motion for summary judgment.

Judgment affirmed.

CHEZEM, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

I do not disagree with the majority opinion to the effect that the Kramer's complaint covered two injuries, one to Dennis and one to Donna. I further agree that the Settlement Agreement and Release involving the Kramers, Good Samaritan Hospital, and Dr. Jacqmain very specifically did not release Dr. Haswell from any claim on the part of the Kramers. The Settlement Agreement and Release pertaining to the Patient's Compensation Fund, while including only the Kramers and the Fund as named parties, nevertheless releases and forever discharges not only the Fund, but "any other person or entity from any and all claims, demands, or causes of action which now exist or which may exist in the future on account of or in any way growing out of any and all known or unknown, foreseen or unforeseen bodily and/or personal injuries and damages arising from the incident." Record at 53–54. Donna Kramer executed the agreement and release not only on behalf of Dennis but as an individual plaintiff. From the inclusive language used, it necessarily includes Dr. Haswell within the term "any other person". It further appears that the "incident" covered was the "incident" of April 30, 1988, at which time Donna Kramer experienced sharp pain and went to Good Samaritan Hospital and from there to Indianapolis by ambulance. It

was during this time that Donna suffered the ruptured uterus and that Dennis died. At no time during this period did the Kramers see or speak to Dr. Haswell. Under the summary judgment designated materials, it is clear that Dr. Haswell did not undertake to render any medical care or advice after April 17, 1988.

To be sure, a prominent aspect of the allegation against Dr. Haswell is that he failed to arrange for a qualified physician to cover for him at Good Samaritan Hospital in the event of an emergency in his absence. That failure could be viewed as having taken place on April 30, 1988. Under such analysis of the facts, that failure is within the "claims, demands, or causes of action" released by the Kramers in their agreement with the Patient's Compensation Fund.

The majority opinion alludes to Haswell's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" filed in Greene County. That motion and the preliminary determination sought in Greene County, as to an affirmative defense or a question of law with respect to the proposed complaint, were based upon the assertion that the claim was barred by the applicable statute of limitations. Even so, to the extent that the Greene Superior Court "determined that issues remained for the jury as to whether Haswell should have provided Donna with care that would have prevented the rupture of her uterus" (Majority slip op. at 3), such claim is also within the claims released by the Kramers.

It is not the prerogative of this court to look behind an otherwise valid and clearly stated release in an attempt to determine what the parties intended. We must give the release the meaning apparent on its face. *Mullen v. Tucker* (1987) Ind.App., 510 N.E.2d 711. No longer does a release of one tortfeasor release all tortfeasors as a matter of Indiana common law. However, a release may bar a claim against a person not a party to the release agreement if it is clear from the document that the instrument intends to release others. *Huffman v. Monroe County Community School Corp.* (1992) Ind., 588 N.E.2d 1264; *Arnold v. Burton* (1995) Ind. App., 651 N.E.2d 1202; *Dobson v. Citizens*

*Gas and Coke Utility* (1994) Ind.App., 634 N.E.2d 1343. As in *OEC–Diasonics, Inc. v. Major* (1993) Ind.App., 622 N.E.2d 1025, the release here involved does so.

I would reverse and remand with instructions to enter summary judgment for Dr. Haswell.