**R.C. PATEL, M.D., Appellant–Defendant,**

v.

**Mary BARKER, Appellee–Plaintiff.**

No. 45A03–0003–CV–96.

Court of Appeals of Indiana.

Jan. 10, 2001.

Rehearing Denied Feb. 15, 2001.

Robert D. Brown, Spangler Jennings & Dougherty, P.C., Merrillville, Indiana, Attorney for Appellant.

Priscilla A. Herochik, Merrillville, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

R.C. Patel, M.D., appeals the jury verdict against him in favor of Mary Barker, raising the following issues for review:

I. When in the course of a single surgical procedure, the surgeon breaches the applicable standard of care in two or more ways causing separate injuries, whether each of the breaches is a separate occurrence for purposes of the Indiana Medical Malpractice Act.

II. Whether the trial court erred in denying Patel's motion for judgment on the evidence because Barker failed to present any evidence that Patel breached the standard of care causing her colon injury.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Barker was diagnosed with a malignancy in her colon and referred to Patel for surgery. Patel performed the surgery, which involved resectioning the colon. During this surgery, Patel used hemoclips [1] to control bleeding. At some point following the surgery, it was discovered that Barker's colon was leaking into her abdominal cavity at the point of reattachment. Patel performed a second surgery to create a colostomy.

Later, doctors discovered that a hemoclip had been left on Barker's ureter. A colorectal surgeon and a urological surgeon then performed a third surgery to remove the hemoclip and reverse the colostomy.

Barker filed a suit for medical malpractice against Patel. At trial, Barker claimed that Patel breached the standard of care in two ways: by suturing the colon in such a way that it leaked and by leaving a hemoclip on her ureter. The case was tried to a jury, which awarded Barker $1,800,000 in damages. The trial court reduced the award to $1,500,000, in compliance with the Indiana Medical Malpractice Act limitation of $750,000 in damages per act of malpractice. Patel now appeals.

## DISCUSSION AND DECISION

### I. Occurrence of malpractice

Patel first argues that the acts about which Barker complains constitute one

---

1. A hemoclip is similar in function and appearance to a staple.

"occurrence" under the Indiana Medical Malpractice Act. We note at the outset that the issue before us arises solely from the decision of the Indiana General Assembly to treat medical providers who have committed malpractice differently from other tortfeasors and to compensate those killed or injured as a result of that malpractice differently than those harmed by any other tort. In a negligence action arising from an automobile collision, for example, the negligent driver is liable for all of the damages proximately caused by his negligence and the injured party recovers all of the damages resulting from the negligence without regard to whether the negligent driver breached the standard of care in one or multiple ways. Thus, it is only because of the inability of those injured as a result of medical malpractice to recover the full amount of their damages that the present inquiry becomes relevant.

Patel argues that the acts about which Barker complains constitute one "occurrence" of malpractice under the Indiana Medical Malpractice Act and maintains that Barker should be entitled to only one recovery, or $750,000. Barker, on the other hand, contends that Patel committed two breaches of the standard of care, and therefore two "occurrences" by failing to close her colon correctly and by leaving a hemoclip in place. Thus, she maintains, and the trial court agreed, that she is entitled to recover the statutorily-capped amount of damages for each occurrence of malpractice.

To resolve this dispute, we must interpret the Indiana Medical Malpractice Act. When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Poehlman v. Feferman,* 717 N.E.2d 578, 581 (Ind.1999); *Community Hosp. of Anderson & Madison County v. McKnight,* 493 N.E.2d 775, 777 (Ind.1986). Clear and unambiguous statutory meaning leaves no room for judi-

cial construction. *Poehlman,* 717 N.E.2d at 581.

If a statute is ambiguous and its meaning is not clear from the words used, judicial construction is proper. *Sue Yee Lee v. Lafayette Home Hosp., Inc.,* 410 N.E.2d 1319, 1322–23 (Ind.Ct.App.1980). In such case, the purpose and goal of judicial construction is to give effect to the intention of the legislature. *Id.* A statute should be construed to accomplish the end for which it was enacted. *Id.* In construing a statute, the court must consider the whole act and, if possible, effect must be given to every word and clause therein. *Guinn v. Light,* 558 N.E.2d 821, 823 (Ind. 1990). Finally, the Indiana Medical Malpractice Act is in derogation of the common law and must be strictly construed. *Cacdac v. West,* 705 N.E.2d 506, 510 (Ind. Ct.App.1999), *trans. dismissed.*

In the Act, malpractice is defined broadly as a tort or breach of contract based on health care services that were provided or that should have been provided to a patient. IC 34–18–2–18. IC 34–18–14–3 further provides:

"(a) The total amount recoverable for an injury or death of a patient may not exceed the following:

(1) Five hundred thousand dollars ($500,000) for an act of malpractice that occurs before January 1, 1990.

(2) Seven hundred fifty thousand dollars ($750,000) for an act of malpractice that occurs:

(A) after December 31, 1989; and

(B) before July 1, 1999.

(3) One million two hundred fifty thousand dollars ($1,250,000) for an act of malpractice that occurs after June 30, 1999.

(b) A health care provider qualified under this article (or IC 27–12 before its repeal) is not liable for an amount in excess of two hundred fifty thousand dollars ($250,000) for an occurrence of malpractice."

Thus, the meaning of the Act hinges on the definitions of the terms "an injury or death," "an act of malpractice," and "an occurrence of malpractice." Although Barker and Patel debate the meaning of the term "occurrence," this term appears only in subsection (b), which discusses the ramifications of a claim to the health care provider. By contrast, subsection (a) is concerned with the effect of the limitation on recovery to the patient. This provision addresses the subject in terms of "injury" and the critical concept is "an act" of malpractice. We therefore conclude that the meaning of "occurrence" is not the dispositive issue here.

In a pair of cases in 1992, this court interpreted the Act's recovery limitation and focused on the term "injury." In *St. Anthony Med. Ctr., Inc. v. Smith*, 592 N.E.2d 732 (Ind.Ct.App.1992), *trans. denied*, the plaintiff, the decedent's estate, brought a wrongful death claim based on medical malpractice. Smith, the decedent, went to the hospital to have a test performed. Prior to the test, he was placed on a restrictive diet and instructed to take laxatives. This, combined with the test itself, can cause a hypotensive condition that can lead to a stroke. After the test, Smith was discharged to the dressing room. Four and a half hours later, an aide found him lying on the floor. He had suffered a stroke. Thereafter, he was admitted to the hospital, where he was later administered an overdose of medication. He died two weeks later while still a patient at the hospital. After a trial, the jury awarded Smith's estate nearly one million dollars. The trial court reduced the award to the statutory cap for an act of malpractice, and the estate appealed.

Quoting the language of the statute, we determined that the estate was entitled to recover only $500,000 (the cap at that time), even if Smith had suffered two separate acts of malpractice. This result obtained because "John suffered a single injury, a stroke, which led to his death. Betty's claim, filed against SAMC, is de-

rived from that death." *Id.* at 739. Thus, the patient's injury was the determinative focus.

Similarly, in *Bova v. Roig*, 604 N.E.2d 1 (Ind.Ct.App.1992), the plaintiff sued for medical malpractice based upon the care of his left eye. He contended that the defendant committed malpractice in his performance of eye surgery and in the postoperative care that he provided. The plaintiff eventually lost sight in his eye. After a trial, the jury awarded the plaintiff damages in excess of the cap, the trial court reduced the award to the cap amount, and the plaintiff appealed.

Once again focusing on the language of the statute and therefore the injury to the patient, we stated that: "The Act allows a recovery of $500,000 for 'any injury or death.' I.C. § 16–9.5–2–2(a). Bova suffered a single injury, blindness in his left eye. Hence, he is entitled to recover only once." *Id.* at 3.

A few years later, in *Miller v. Memorial Hosp. of South Bend, Inc.*, 679 N.E.2d 1329 (Ind.1997), our supreme court considered whether certain conduct constituted one or two separate acts or occurrences of malpractice. In that case, the plaintiffs alleged that Mrs. Miller's obstetrician failed to appropriately treat her infant in utero for posttermism which resulted in hypoxia and brain damage. The plaintiffs also alleged that the hospital failed to treat the infant upon birth for zero blood glucose, which caused additional, distinct brain damage. *Id.* at 1331. The plaintiffs argued that these were two separate acts of malpractice resulting in two separate injuries and therefore allowing two separate recoveries under the Malpractice Act.

Our supreme court agreed. It characterized the injuries as prenatal and postnatal, noting that they resulted in damage to different parts of the infant's brain. Further, the plaintiffs' complaint asserted two claims against two defendants and specified different dates for each claim. Thus, the court held that a genuine issue of

material fact existed as to "whether Nicholas Miller suffered separate injuries from two distinct alleged occurrences of medical malpractice." *Id.* at 1329. In noting "the rare factual circumstances" of the case where separate acts caused separate injuries, the *Miller* court acknowledged that while the Malpractice Act authorizes only one recovery where a single injury exists, irrespective of the number of acts causing the injury, the statute did not preclude separate recoveries where there are two separate and distinct injuries caused by two separate and distinct occurrences of malpractice. It stated:

> "The Medical Malpractice Act's limitations apply to 'any injury or death of a patient' and 'for an occurrence of malpractice.' It authorizes only one recovery in those cases where a single injury exists, irrespective of the number of acts causing the injury. Conversely, there is no dispute that, if there are two separate and distinct injuries caused by two separate occurrences of malpractice, the statute does not preclude two separate recoveries (each separately limited in accordance with the Act)."

*Id.* at 1331–32 (citations omitted).[2] *See also Haswell v. Kramer,* 659 N.E.2d 146, 151 (Ind.Ct.App.1995), *trans. denied* (1996) ("[T]here is nothing in the act precluding recovery for separate injuries that are sustained as a result of more than one act of malpractice.")

Thus, the cases have interpreted the Act as allowing only one recovery when multiple breaches lead to a single injury and multiple recoveries when multiple breaches during more than one procedure lead to multiple injuries. Here, we face the unique case where multiple breaches during a single procedure lead to multiple injuries. Nonetheless, we see no princi-

pled reason why this distinction should require a different analysis. Rather, the limitation on recovery applies to "an injury or death," not "an act of malpractice." Here, it is undisputed that Barker had two distinct injuries from two distinct acts of malpractice to two separate body systems, her digestive system and her urinary system. Thus, we believe the plain language of the Act allows for recovery up to the cap amount on each claim arising from separate acts of malpractice resulting in separate injuries.

■ We hold that the Indiana Medical Malpractice Act allows for one recovery for each distinct act of malpractice that results in a distinct injury, even if the multiple acts of malpractice occur in the same procedure. The trial court did not err in allowing separate recoveries each subject to the statutory cap.

■ Patel also contends that the trial court erred in reducing the jury's award to $1,500,000. He claims that because the jury returned a general verdict, it was impossible to discern the amount of damages awarded on each claim, and there was no evidence that the jury intended an equal amount of damages on each claim. In essence, Patel asserts that the jury could have awarded one dollar in damages on one of the claims and the remainder on the other, (making his liability after remittitur $750,001) rather than $750,000 on each. However, at trial, Barker requested separate verdict forms for her two claims and Patel objected. Based on Patel's objection, Barker withdrew her request and agreed to the general verdict form. A party cannot invite error then complain about the error on appeal. *E.R. v. Marion County Office of Family & Children,* 729 N.E.2d 1052, 1061 (Ind.Ct.App.2000) (invit-

---

**2.** We note that the courts in *Miller, Bova,* and *Smith* interpreting the Act discussed it as it appeared at IC 16–9.5–2–2. At that time, the limitation on recovery applied to *"any* injury or death" (emphasis added). In 1993, the General Assembly recodified the Act at IC 27–12–14–3. When it did so, it changed the statutory language to *"an* injury or death" (emphasis added). We perceive no substantive change was intended or effected by this change. The Act was subsequently moved again to its present location in title 34, but the language was not altered.

ed error is not reversible error). Patel has waived the form of the general verdict for appellate review by his failure to challenge it at trial. *Stover v. State*, 621 N.E.2d 664, 668 (Ind.Ct.App.1993).

## II. Judgment on the evidence

Patel next asserts that the trial court erred in denying his motion for a judgment on the evidence contending that there was no evidence that Barker's anastomotic colon leak was the result of any breach of the standard of care by Patel.

The denial of a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Zemco Mfg., Inc. v. Pecoraro*, 703 N.E.2d 1064, 1071 (Ind.Ct.App.1998), *trans. denied* (1999). In reviewing a trial court's ruling on a motion for judgment on the evidence, we apply the same standard as the trial court and look only to the evidence and reasonable inferences most favorable to the non-moving party. *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind.Ct.App.1999), *trans. denied; Firstmark Standard Life Ins. Co. v. Goss*, 699 N.E.2d 689, 696 (Ind.Ct.App.1998), *trans. denied* (1999).

When the defendant moves for judgment on the evidence at the close of the plaintiff's evidence in a jury trial, the motion should be granted only where an issue in the case or an essential element of the claim is not supported by sufficient evidence. *Firstmark*, 699 N.E.2d at 696; *see* Ind. Trial Rule 50(A). Judgment on the evidence is appropriate only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *City of Fort Wayne*, 706 N.E.2d at 607. If there is any probative evidence or reasonable inference to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Firstmark*, 699 N.E.2d at 696.

Here, Dr. Joseph Tyrrell, who assisted on Barker's surgery, and who was a general doctor and surgeon, testified that while a leak is more likely the result of anatomy, the surgeon's technique can play a role in developing a leak. He stated that if the surgeon examines the bowel, he should be able to see if there is a leak. He also opined that it is inappropriate to close a surgical incision if there is a leak and that it is a deviation from the standard of care to close an incision without diagnosing a leak if a leak is present. This was evidence of Patel's breach of the standard of care which resulted in Barker's colon leak. Thus, there was evidence on every element of the claim, and Patel was not entitled to judgment on the evidence. The trial court did not err in denying Patel's motion.

Affirmed.

DARDEN, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I believe that Barker is entitled to recover for only one incident of malpractice under the Indiana Medical Malpractice Act (the Act) and respectfully dissent from the majority's conclusion to the contrary.

I agree with the majority to the extent that it characterizes the question as one involving "multiple breaches during a single procedure." Op. at 33. The majority focuses upon the "multiple breaches" in concluding that there were two incidents of medical malpractice under the Act. I, on the other hand, believe that the dispositive fact is that Barker's allegation's stem from a single surgery.

Previous opinions of the Indiana Supreme Court and this court have acknowledged that the Act was a legislative response to an impending health care crisis in the 1970s.

Specifically, "the problem of expensive medical malpractice insurance, which had been simmering for over a decade, came to

a boil and threatened to make such insurance completely unavailable." *Winona Memorial Hosp. Found. of Indianapolis v. Lomax*, 465 N.E.2d 731, 738 (Ind.Ct.App. 1984). The Act "was the legislative response to the crisis in the availability of medical malpractice insurance, which, in turn, was threatening the availability of the health care services to the public." *Id.* at 739. Our supreme court noted in *Rohrabaugh v. Wagoner*, 274 Ind. 661, 413 N.E.2d 891 (1980) that one of the methods conceived by the Legislature to remedy this problem involved limiting patient remedies against health care providers. Those limitations included restricting the amount of money a medical malpractice plaintiff could recover. It is beyond debate that the cap on recoveries under the Act is an integral part of the legislative scheme. As the majority notes, our courts have several times been called upon to determine issues relating to the cap. Since the cap aspect of the Act was declared constitutional, the question is seldom, if ever, presented in the form of a challenge to the actual amount of the cap. Rather, plaintiffs have sought to increase the amount of their recoveries on the basis of multiple claims of malpractice.

Thus far, the principles that have emerged on this question are that (1) a person may recover only once for a single injury, even where that injury was caused by multiple breaches of the standard of care, *see, e.g.*, *Bova v. Roig*, 604 N.E.2d 1 (Ind.Ct.App.1992) and (2) multiple recoveries may result from multiple, separate breaches that cause multiple injuries. *See, e.g.*, *Miller v. Memorial Hosp. of South Bend, Inc.*, 679 N.E.2d 1329 (Ind.1997). I find those conclusions unassailable, in part because those principles are entirely consistent with the purpose and legislative intent underlying the Act.

With regard to the question at issue here, the Act neither expressly embraces nor rejects the concept of multiple recoveries for multiple breaches in a single surgical procedure. Indiana's appellate courts have not decided a case that compels either result. Indeed, viewed strictly as an exercise in statutory construction, the majority's analysis is not unreasonable. My disagreement with the law created in the instant case is based upon my conclusion that it contravenes the purpose of the Act, and therefore also contravenes the intent of the legislature that passed the Act.

The principles that emerge from the cases that have thus far grappled with this question embody the concept that, in order to justify multiple recoveries, there must be a separation in time and circumstance of the multiple breaches. *See, e.g.*, *Miller v. Memorial Hosp. of South Bend, Inc.*, 679 N.E.2d 1329 (involving prenatal and postnatal injury to a child). In my view, for purposes of the Act, a surgical procedure should be regarded as a single act of medical treatment, albeit one that may include many steps. The various steps in a surgery are not sufficiently distinct from one another in time and circumstance to justify multiple recoveries under the Act. In other words, the Act does not contemplate the possibility of as many recoveries of the cap amount as there are steps in a single surgical procedure. Such runs contrary to the very purpose of the Act. I believe that when the Legislature limited recovery to $750,000 for an act of malpractice, it did not envision or intend multimillion-dollar recoveries stemming from what is referred to in the common vernacular as a "botched" surgery, regardless of the number of ways in which it was botched.

I would reverse the trial court and limit the amount of Barker's recovery to $750,000.