

FILED

Jul 23 2019, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Kenneth J. Allen
Robert D. Brown
Sarah M. Cafiero
Kenneth J. Allen Law Group, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEES

Michael E. O'Neill
Jeremy W. Willett
Robert J. Dignam
Kathleen M. Erickson
O'Neill McFadden & Willett, LLP
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard L. Wallen, Individually, and as Personal Representative of the Estate of Cathy L. Wallen, Deceased,

*Appellant-Plaintiff,*

v.

Dr. Steven Hossler, M.D., and Radiologic Associates of Northwest Indiana, P.C.,

*Appellees-Defendants.*

July 23, 2019

Court of Appeals Case No. 19A-CT-40

Appeal from the Porter Superior Court

The Honorable Jeffrey W. Clymer, Judge

Trial Court Cause No. 64D02-1609-CT-8390

**Najam, Judge.**

# Statement of the Case

[1] Richard L. Wallen, Individually, and as Personal Representative of the Estate of Cathy L. Wallen, Deceased, ("Wallen") filed a complaint alleging that Dr. Steven Hossler, M.D., and Radiologic Associates of Northwest Indiana, P.C. (collectively "Dr. Hossler") committed medical malpractice in providing medical care to Wallen's wife, Cathy, which resulted in injuries and her death. About five weeks prior to trial, Dr. Hossler offered to settle his liability for $250,000 with various conditions attached, which Wallen rejected. Thereafter, Dr. Hossler sought to force Wallen to accept the offer and filed a motion to enforce the Medical Malpractice Act ("the Act"). Following multiple hearings and memoranda filed with the court, but with no evidence submitted by either party, the trial court granted Dr. Hossler's motion to enforce the Act. Wallen appeals and presents a single dispositive issue for our review, namely, whether the trial court erred when it concluded that Wallen was required to accept Dr. Hossler's settlement offer and proceed against the Patient's Compensation Fund for additional damages.

[2] We reverse and remand for further proceedings.

# Facts and Procedural History

[3] On November 18, 2013, Cathy was diagnosed with a pulmonary embolism and admitted to Porter Regional Hospital in Valparaiso. Cathy's treating physician prescribed anti-coagulant therapy to treat the embolism. Cathy's condition was improving until November 24, when she began to experience severe pain in the

left lower quadrant of her abdomen. Cathy's treating physician ordered an x-ray of Cathy's abdomen, and a little more than an hour later, Dr. Hossler, a radiologist, interpreted the x-ray "as showing no evidence of bowel obstruction or bowel abnormality but possibly showing an enlarged spleen." Appellant's App. Vol. 2 at 20.

[4] When Cathy's pain did not subside, her treating physician suspected that Cathy was bleeding internally and ordered a CT scan of Cathy's abdomen. Dr. Hossler interpreted the CT scan as showing that Cathy's pain was due to gallstones. Because Dr. Hossler did not make a diagnosis of internal bleeding, Cathy continued to receive doses of anti-coagulant medications. But Cathy did, in fact, have internal bleeding, which eventually "burst through the rectus abdominal muscles and sheath and resulted in acute kidney injury impairing her renal function and clearance of her blood thinning medications." *Id.* at 21. Thereafter, Cathy suffered "intra-abdominal hemorrhaging, hemorrhagic shock, multi-system organ failure, and death" on December 9. *Id.* at 22.

[5] Wallen timely filed a proposed complaint against Dr. Hossler alleging medical malpractice with the Indiana Department of Insurance. After a Medical Review Panel issued an opinion,[1] on August 29, 2016, Wallen filed a complaint

---

[1] The Panel's opinion is not included in the record on appeal. However, our review of the pleadings available on Odyssey revealed that the Panel concluded as follows:

> The evidence supports the conclusion that that the defendants, Dr. Steven Hossler, M.D., & Radiologic Associates of Northwest Indiana, P.C., failed to comply with the appropriate standard of care as charged in the complaint.

against Dr. Hossler with the trial court. Wallen alleged in relevant part that, as a "direct and proximate result of the negligence and/or reckless acts and omissions of the Defendants, and each of them, Cathy suffered severe and painful injuries, which collectively or separately resulted in her death on December 9, 2013." Appellees' App. Vol. 2 at 4. Wallen subsequently offered to settle his claims with Dr. Hossler for $250,000, the applicable statutory cap for a single medical malpractice claim, which would allow Wallen to pursue additional damages from the Indiana Patient's Compensation Fund ("the Fund"), but Dr. Hossler declined the offer.

[6] However, on November 2, 2018, approximately five weeks before the scheduled jury trial, Dr. Hossler offered to settle Wallen's claims against him for $250,000, subject to thirteen conditions. The conditional settlement offer was not acceptable to Wallen, and he rejected it. On November 8, the parties appeared for a pretrial conference and submitted their proposed pretrial order. During the pretrial conference, Dr. Hossler asked the trial court to dismiss him from the proceedings. Dr. Hossler argued that, pursuant to the Act, the Fund was the "real party in interest" once Dr. Hossler had offered to pay the $250,000 statutory cap for his liability. Tr. Vol. 2 at 5. Because Dr. Hossler had not previously notified Wallen that he had intended to make this argument at the

<hr>

However, the conduct complained of was not a factor of the resultant outcome; nor was the patient denied a greater chance of survival.

pretrial conference, the court took the matter under advisement to permit Wallen time to research the issue and respond.

[7]    In the meantime, on November 12, Dr. Hossler filed a Motion to Enforce Indiana Medical Malpractice Act, which stated as follows:

> [Dr. Hossler] move[s] for this Court to enforce the Indiana Medical Malpractice Act, vacate the jury trial setting, and instruct Plaintiff to file and serve a petition on the Commissioner of Insurance in accordance with Ind. Code § 34-18-15-3. In support of this Motion, [Dr. Hossler] state[s] as follows:
>
> 1. On November 8, 2018, an initial Final Pretrial Conference was held in this matter. At this Final Pretrial Conference, counsel for [Dr. Hossler] explained why a trial by jury would be improper based on the current posture of the case. This Court then requested a formal Motion and Memorandum on this issue.
>
> 2. [Dr. Hossler has] admitted legal liability through a maximum payment in accordance with the Indiana Medical Malpractice Act, Ind. Code § 34-18-1, et seq. ("MMA"). Specifically, . . . [Dr. Hossler has] elected to pay the cap amount of Two Hundred Fifty Thousand ($250,000) for an occurrence of malpractice.
>
> 3. Therefore, there are no longer any issues before the Court regarding [Dr. Hossler's] medical negligence or medical causation of alleged damages.
>
> 4. As such, the exclusive remaining issue in the case is the measure of Plaintiff's alleged excess damages, which must be determined in a hearing or bench trial that includes participation by the Commissioner of Insurance as a party to such proceedings.

5. Dr. Hossler [has] filed a Memorandum in Support of Motion to Enforce Indiana Medical Malpractice Act, which is incorporated by reference.

WHEREFORE, [Dr. Hossler] respectfully request[s] that the Court enforce the applicable provisions of the Indiana Medical Malpractice Act, vacate the jury trial setting, and instruct Plaintiff to file and serve a petition on the Commissioner of Insurance in accordance with Ind. Code § 34-18-15-3, and for all further just and proper relief.

Appellant's App. Vol. 2 at 34-35.

[8] Wallen filed a memorandum in opposition to Dr. Hossler's motion, and the trial court held a hearing on November 20. At the conclusion of the hearing, the court requested that the parties file supplemental briefs on the issues raised in Dr. Hossler's motion. After the parties filed their supplemental briefs, the trial court held a second hearing by telephone. At the conclusion of that telephonic hearing, the court granted Dr. Hossler's motion to enforce the Act, and the court subsequently issued a written order. In its order, the court stated as follows:

The Defendants have made a settlement offer of $250,000 to settle and pay one cap and have the case proceed under I[.]C.[ §] 34-18-15-3. The Plaintiff has not "accepted" the settlement offer for the reasons set forth below and has argued that the case should proceed to trial in two weeks.

The Plaintiff asserts that I[.]C.[ §] 34-18-15-3 does not apply because there has been no "agreed" settlement. There has been no case cited by either party as to whether a Plaintiff can refuse a

settlement offer of the cap and proceed to jury trial. With no assistance from case law (the Medical Malpractice Act could have stated when a settlement of the cap is "offered" instead of "agreed") the Court finds that the offer triggers the application of the process set forth in I[.]C[. §] 34-18-15-3, and that only one cap applies.

The Plaintiff also claims the Defendant's settlement offer is conditional, so are all settlement offers.

The Plaintiff contends that Defendants have cited no authority for forcing a settlement, neither has the Plaintiff.

## THE NUMBER OF CAPS

The real issue in this case is the number of statutory caps that apply. Under the Indiana Medical Malpractice Act, a Plaintiff can receive one recovery for each distinct act of malpractice that results in a distinct injury, even if multiple acts of malpractice occur in the same procedure. *Patel v. Barker*, 742 N.E.2d 28 (Ind. Ct. App. 2001)[, *trans. denied*]. In the instant case, the Plaintiff claims that Dr. Hossler was negligent by both omission and commission. The Plaintiff contends in the proposed Pre-Trial Order that Defendant's failure to recognize, report, and timely communicate to the ordering physician the bleeding shown on Cathy's CT was negligent and fell below the standard of care. Had the bleeding on Cathy's CT exam been timely recognized, reported, and communicated by defendants to Cathy's treating physicians, it would have acutely influenced her outcome. Defendant Hossler was additionally negligent and deviated from the standard of care in misinterpreting the abnormalities shown on the November 24th CT and affirmatively ruling out bleeding, attributing her abdominal pain instead to gallstones; and by doing so defendant misled Cathy's physicians, delaying reversal of her anticoagulation and her resuscitation for hours until it was too late, resulting in massive retroperitoneal

and intra-abdominal hemorrhaging, hemorrhagic shock, multi-system organ failure and death.

The questions based on the medicine:  Whether Dr. Hossler committed two distinct acts of malpractice and whether Cathy Wal[len] suffered two distinct injuries as a result of the claimed negligent acts.  Based on these allegations, the Plaintiff claims that there are questions of fact, similar to a Motion for Summary Judgment, that must be decided by a jury.  Further, because the Defendants' offer of just one cap, not two, which has not been "accepted" the case must go to a jury trial against the named Defendants, not the . . . Fund.

In [*Patel*], the Plaintiff suffered injuries to two distinct body parts; her colon and her ureter and she survived having three surgeries. Two surgeries were required to repair the negligent treatments.

In the instant case, Dr. Hossler reviewed CT images once and wrote one report.  See the Plaintiff's contentions in the proposed Pre-Trial Order.  Based on *Patel v. Barker*, 742 N.E.2d 28 (Ind. Ct. App. 2001) and *Atterholt v. Robinson*, 872 N.E.2d 633 (Ind. Ct. App. 2007) the Court finds that there was one distinct act of negligence, misreading the diagnostic image, and one distinct injury, the Plaintiff's death which resulted from the continued use of blood thinners after the misdiagnosis.  Accordingly, the Medical Malpractice Act applies and this matter should proceed against the Patient Compensation Fund. . . .

*Id.* at 15-17 (emphasis original).  The trial court subsequently certified the order as a final appealable order under Trial Rule 54(B).  This appeal ensued.

## Discussion and Decision

Wallen contends that the trial court erred when it granted Dr. Hossler's motion to enforce the Act.  In particular, Wallen maintains that nothing in the Act

requires that he accept Dr. Hossler's conditional settlement offer and forego a jury trial against Dr. Hossler. Wallen further asserts that whether Dr. Hossler committed two separate acts of medical malpractice with two distinct injuries to Cathy, which would support damages of up to $500,000 in his claims against Dr. Hossler, are questions of fact reserved for a fact-finder. We address each contention in turn. Our standard of review on both issues is *de novo*.

### Overview: Indiana's Medical Malpractice Act

[10]     As we have explained,

> [t]he [Act] allows a "patient or the representative of a patient" to bring a malpractice claim "for bodily injury or death." *Goleski v. Fritz*, 768 N.E.2d 889, 891 (Ind. 2002) (citing Ind. Code § 34-18-8-1). The [Act] was designed to curtail liability for medical malpractice. *Chamberlain v. Walpole*, 822 N.E.2d 959, 963 (Ind. 2005). It does not create substantive rights or new causes of action and, instead, "merely requires that claims for medical malpractice that are otherwise recognized under tort law and applicable statutes be pursued through the procedures of the [Act]." *Id.* The [Act] provides that for an act of malpractice occurring after June 30, 1999,[ and before July 1, 2017,] the total amount recoverable for an injury or death of a patient may not exceed $1,250,000. I.C. § 34-18-14-3. A qualified healthcare provider[] is liable for the initial $250,000 of damages, and the remainder of the judgment or settlement amount shall be paid from the Fund. *Id.*

*Atterholt*, 872 N.E.2d at 639-40.[2]

[11] The Act "creates a bifurcated procedure for determining medical malpractice claims against a qualified healthcare provider." *Robertson v. B.O.*, 977 N.E.2d 341, 343 (Ind. 2012). This process is correlated to the separate damages caps imposed by the Act. *Id.* If a judgment or settlement fixes damages in excess of a qualified health care provider's liability, then a plaintiff may recover excess damages from the Fund. *Id.* (citing I.C. § 34-18-14-3(c)). An injured plaintiff thus proceeds first against the healthcare provider and then against the Fund. *Id.*

[12] Further, as our Supreme Court has held,

> [t]he Medical Malpractice Act's limitations apply to "any injury or death of a patient" and "for an occurrence of malpractice." Ind. Code § 16-9.5-2-2(a) and (b). It authorizes only one recovery in those cases where a single injury exists, irrespective of the number of acts causing the injury. *See Bova v. Roig*, 604 N.E.2d 1 (Ind. Ct. App. 1992); *St. Anthony Med. Center v. Smith*, 592 N.E.2d 732 (Ind. Ct. App. 1992). Conversely, there is no dispute that, if there are two separate and distinct injuries caused by two separate occurrences of malpractice, the statute does not preclude two separate recoveries (each separately limited in accordance with the Act).

---

[2] Indiana Code Section 34-18-14-3 has since been amended and provides higher limits for both the total amount recoverable for an injury or death of a patient and a health care provider's maximum liability for occurrences after June 30, 2017. There is no dispute that the amended statutory language does not apply here.

*Miller by Miller v. Mem'l Hosp. of South Bend, Inc.*, 679 N.E.2d 1329, 1331-32 (Ind. 1997).

### Indiana Code Section 34-18-15-3

[13]   Here, again, in his motion to enforce the Act, Dr. Hossler argued that, because he had offered to settle with Wallen for the statutory cap of $250,000, Wallen was required to accept that offer and forego a jury trial.  In support of his contention, Dr. Hossler relied on Indiana Code Section 34-18-15-3 (2013) ("the statute"), which provides[3] in relevant part as follows:

> If a health care provider or its insurer *has agreed to settle its liability* on a claim by payment of its policy limits of two hundred fifty thousand dollars ($250,000), and the claimant is demanding an amount in excess of that amount, the following procedure must be followed:
>
> > (1) A petition shall be filed by the claimant in the court named in the proposed complaint, or in the circuit or superior court of Marion County, at the claimant's election, seeking:
> >
> > > (A) approval of an agreed settlement, if any; or
> > >
> > > (B) demanding payment of damages from the patient's compensation fund.

---

[3]  This statute was amended effective July 1, 2017, to account for the higher policy limits applicable to medical negligence that occurred after June 30, 2017.

(Emphasis added.)

[14] The parties dispute the meaning of the phrase "agreed to settle" in the statute, which presents an issue of first impression for this Court. Dr. Hossler maintains that, because he offered to settle his liability for $250,000, Wallen was required by statute to accept that offer and proceed against the Fund to seek additional damages. But Wallen maintains that the statute only requires him to release Dr. Hossler and proceed against the Fund after Wallen has entered into a settlement agreement with Dr. Hossler, which has not yet occurred.

[15] It is well settled that, if a statute is unambiguous, we may not interpret it but must give the statute its clear and plain meaning. *Med. Assur. of Ind. v. McCarty*, 808 N.E.2d 737, 741 (Ind. Ct. App. 2004). Moreover, "in interpreting a statute, we must consider not only what the statute says but what it does not say." *Curley v. Lake Cty. Bd. of Elections & Registration*, 896 N.E.2d 24, 37 (Ind. Ct. App. 2008), *trans. denied*. In other words, "we are obliged to suppose that the General Assembly chose the language it did for a reason." *State v. Prater*, 922 N.E.2d 746, 750 (Ind. Ct. App. 2010), *trans. denied*. Further, we note that, "because the Act is in derogation of common law, it must be strictly construed." *Med. Assur. of Ind.*, 808 N.E.2d at 743. When the legislature enacts a statute in derogation of common law, we presume that the legislature does not intend to make any change beyond what is declared in express terms or by unmistakable implication. *Id.*

[16] Here, the parties agree that the statute is unambiguous, albeit to support opposing interpretations. We hold that the statute unambiguously sets out a procedure whereby a plaintiff, who has in fact settled with a defendant health care provider, may pursue excess damages from the Fund. Dr. Hossler would have us define "agreed to settle" to mean "offered to settle." But the legislature did not write the statute to say, "If a health care provider has *offered* a plaintiff $250,000, the plaintiff must accept that settlement offer and proceed against the Fund for excess damages." The statute clearly contemplates that a plaintiff shall proceed against the Fund only after the plaintiff has affirmatively entered into a settlement agreement with a defendant health care provider or insurer in lieu of trial. An offer is not an agreement. A settlement agreement requires at least two parties.

[17] In the alternative, Indiana Code Section 34-18-14-3(c) provides in relevant part that "[a]ny amount due from a *judgment* . . . that is in excess of the total liability of all liable health care providers . . . shall be paid from the [Fund]." Thus, a plaintiff is always entitled to reject a defendant health care provider's settlement offer and proceed to trial to determine his total damages, including damages to be paid by the Fund.

[18] Finally, we note that our courts have consistently addressed Indiana Code Section 34-18-15-3 as being applicable only in the event of an actual settlement agreement between the parties. For example, in *Smith v. Pancner*, our Supreme

Court considered whether, under a former version of the statute,[4] an "agreement with a qualified provider who is one of multiple jointly liable providers is sufficient to [permit a plaintiff to] access the Fund." 679 N.E.2d 893, 896 (Ind. 1997). The Court's analysis included its determination that, under the statute, there is "no requirement that the parties cannot 'agree to settle' orally or only partially in writing." *Id.* at 895. And the Court stated that "it is clear that the Act contemplates the prospect that more than one provider may be liable for the same occurrence and may contribute to *a settlement that gives access to the Fund*." *Id.* at 896 (emphasis added). In sum, throughout *Smith*, the Court makes clear that "agreed to settle" in the statute means that the parties must have entered into a settlement agreement before the plaintiff can access the Fund.

[19] Here, the trial court erred when it concluded that Dr. Hossler's "offer trigger[ed] the application of the process set forth in" the statute and, in effect, that Wallen was required to accept Dr. Hossler's settlement offer. Appellant's App. Vol. 2 at 16. A settlement is, by definition, a voluntary agreement to resolve contested issues. In other words, a settlement cannot be compelled. That is especially true here, where Dr. Hossler's offer was encumbered by thirteen conditions, which were unacceptable to Wallen. Wallen may agree to

_____

[4] Indiana Code Section 34-18-15-3 was formerly codified at Indiana Code Section 27-12-15-3 and included the same "agreed to settle" language relevant to the issue here.

settle with Dr. Hossler, or Wallen may choose to proceed to trial. Accordingly, we reverse and remand for further proceedings.

### *One or Two Statutory Caps*

[20] The trial court also found that the "real issue in this case is the number of statutory caps that apply." Appellant's App. Vol. 2 at 16. Because this issue is likely to recur on remand, we address the trial court's conclusion that Dr. Hossler committed a single act[5] of malpractice which resulted in Cathy's death. The trial court resolved this issue as a matter of law, without having heard any evidence from either party.[6] Wallen asserts that whether Dr. Hossler committed two separate acts of malpractice that resulted in two separate injuries to Cathy is a question of fact for a jury. Accordingly, Wallen maintains that the trial court erred when it resolved this issue as a matter of law.

[21] It is well settled that the Act "allows for one recovery for each distinct act of malpractice that results in a distinct injury, even if the multiple acts of malpractice occur in the same procedure." *Patel*, 742 N.E.2d at 33. And, more specifically, "a doctor who commits two or more negligent acts in treating a patient and thereby causes two or more distinct injuries is liable for the

---

[5] Our courts treat the word "occurrence" as interchangeable with the word "act" in describing instances of medical malpractice. *See Medical Assur. of Ind.*, 808 N.E.2d at 744.

[6] Wallen contends that the trial court, in essence, entered summary judgment in favor of Dr. Hossler on this issue, *sua sponte*. We cannot agree. Nothing in the record indicates that either the trial court or the parties considered Dr. Hossler's Motion to Enforce the Act to be a summary judgment motion. Indeed, neither party submitted evidence to the trial court.

maximum statutory payment for each compensable injury." *Medical Assur. of Ind.*, 808 N.E.2d at 745.

[22] Issues of negligence, causation, and reasonable care are generally a determination for a trier of fact. *See Kader v. Dep't of Corr.*, 1 N.E.3d 717, 726 (Ind. Ct. App. 2013). And in a medical malpractice proceeding, expert medical testimony is usually required to determine whether a physician's conduct fell below the applicable standard of care. *Bader v. Johnson*, 732 N.E.2d 1212, 1217 (Ind. 2000). Expert testimony is also generally required to prove proximate cause in medical malpractice actions. *See Singh v. Lyday*, 889 N.E.2d 342, 357 (Ind. Ct. App. 2008), *trans. denied*. It follows, then, that whether a physician committed multiple breaches of the applicable standard of care during his treatment of a patient that resulted in multiple, distinct injuries also typically requires expert opinion and a determination by a trier of fact.

[23] Here, however, Wallen has not alleged, and he cannot prove, that Dr. Hossler committed two distinct acts of medical malpractice. Wallen's claims arise from a single act by Dr. Hossler, namely, his interpretation of a CT scan of Cathy's abdomen. In response to Dr. Hossler's motion, Wallen characterized that single act as consisting of two acts of malpractice: a misdiagnosis and, separately, a failure to diagnose. In particular, Wallen argued that Dr. Hossler misdiagnosed Cathy as having gallstones when he read the CT scan and he failed to diagnose the internal bleeding when he read the same CT scan.

[24] The factual predicate for a medical malpractice claim is a negligent act or omission. A single negligent act or omission supports a single malpractice claim and cannot support multiple claims where, for example, as here, the misdiagnosis and the failure to diagnose are not freestanding but arise from the same act or omission. We agree with the trial court that Dr. Hossler's alleged misdiagnosis and failure to diagnose comprise "one distinct act of negligence," namely, "misreading the [CT scan.]" Appellant's App. Vol. 2 at 17. Dr. Hossler's misdiagnosis and failure to diagnose, under the facts as alleged here, occurred simultaneously when he interpreted the CT scan and wrote his report. In contrast, in *Patel*, while the alleged malpractice occurred during one surgery, there were "two distinct acts of malpractice to two separate body systems, [the patient's] digestive system and her urinary system," and the acts occurred at different times during the surgery. 742 N.E.2d at 33. In particular, the defendant "fail[ed] to close her colon correctly and [left] a hemoclip in place" on her ureter. *Id.* at 31. Further, in *Miller*, two defendant providers each allegedly committed a separate, distinct act of malpractice—one that occurred while the patient was still in his mother's womb and one that occurred after his birth. 679 N.E.2d at 1332. Wallen does not cite to any Indiana case, and our research reveals none, where a single act by a health care provider was construed as two distinct acts of medical malpractice.

[25] In sum, Wallen attempts to create two distinct acts of malpractice out of a single act by Dr. Hossler—misinterpreting the CT scan—by alleging that he both misdiagnosed and failed to diagnose the internal bleeding. While, on

another set of facts, a misdiagnosis and a failure to diagnose might constitute two distinct acts of medical negligence, in this case the two are one and the same. Here, assuming that the evidence will show that Dr. Hossler both misdiagnosed Cathy's condition and failed to diagnose her internal bleeding, we hold, as a matter of law, that Dr. Hossler committed a single act of medical malpractice when he misinterpreted the CT scan and wrote one report. Accordingly, the trial court did not err when it concluded that Wallen is not entitled to recover more than one statutory cap in his claims against Dr. Hossler.[7]

## Conclusion

[26] Under the express provisions of the Act, Wallen may pursue excess damages from the Fund either after a jury trial or after he has entered into a settlement agreement with Dr. Hossler. Nothing in the Act requires Wallen to accept Dr. Hossler's offer to settle his liability. And, while whether a defendant health care provider has committed more than one act of medical malpractice is generally a question of fact, here, where Wallen's allegations cannot be construed as alleging more than one act, we hold as a matter of law that Wallen is only entitled to one statutory cap in his complaint against Dr. Hossler.

[27] Reversed and remanded for further proceedings.

---

[7] Because we remand for further proceedings, we need not address Wallen's contention that the trial court erred when it did not award him prejudgment interest.

Robb, J., concurs.

Baker, J., concurs in part and concurs in result in part with separate opinion.

| | |
|---|---|
| Richard L. Wallen, Individually, and as Personal Representative of the Estate of Cathy L. Wallen, Deceased, | Court of Appeals Case No. 19A-CT-40 |
| *Appellant-Plaintiff,* | |
| v. | |
| Dr. Steven Hossler, M.D., and Radiologic Associates of Northwest Indiana, P.C., | |
| *Appellees-Defendants.* | |

**Baker, Judge, concurring and concurring in result.**

I concur in the result reached by the majority and I fully concur in its analysis regarding whether a settlement can be compelled. I respectfully part ways, however, with its analysis regarding the number of statutory caps at issue. In my view, there were two different acts of medical malpractice. But I do not think that it matters, inasmuch as there was only one injury—Cathy's death. Because it is without dispute that she sustained only a single injury, I agree with

the majority that Wallen is not entitled to recover more than one statutory cap in his claims against Dr. Hossler.