MEDICAL ASSURANCE OF INDIANA
and R.C. Patel, M.D., Appellants,

v.

Sally McCARTY, in her capacity as Commissioner of the Indiana Department of Insurance and Administrator of the Indiana Patient's Compensation Fund, Appellees.

No. 49A02–0401–CV–83.

Court of Appeals of Indiana.

May 20, 2004.

See also 742 N.E.2d 28.

John David Hoover, J. Scott Fanzini, Hoover Hull Baker & Heath, LLP, Indianapolis, IN, Edward L. Murphy, Diana C. Bauer, Miller Carson Boxberger & Murphy, Fort Wayne, IN, Attorneys for Appellants.

Robert F. Wagner, A. Richard M. Blaiklock, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Medical Assurance of Indiana ("MAI") and Dr. R.C. Patel appeal the trial court's entry of summary judgment against them and in favor of the Indiana Patient's Compensation Fund ("the Fund"). We affirm.

### Issue

The restated issue before us is whether MAI is required to pay the statutory maximum under the Indiana Medical Malpractice Act ("the Act") for each of two acts of malpractice committed by Dr. Patel during one surgery.

### Facts[1]

■ This is the second appeal concerning an operation performed in 1993 by Dr. Patel on Mary Barker. We set forth the facts underlying the first appeal as follows:

Barker was diagnosed with a malignancy in her colon and referred to Patel for surgery. Patel performed the surgery, which involved resectioning the colon. During this surgery, Patel used hemoclips to control bleeding. At some point following the surgery, it was discovered that Barker's colon was leaking into her abdominal cavity at the point of reattachment. Patel performed a second surgery to create a colostomy.

Later, doctors discovered that a hemoclip had been left on Barker's ureter. A colorectal surgeon and a urological surgeon then performed a third surgery to remove the hemoclip and reverse the colostomy.

Barker filed a suit for medical malpractice against Patel. At trial, Barker claimed that Patel breached the standard of care in two ways: by suturing the colon in such a way that it leaked and by leaving a hemoclip on her ureter. The case was tried to a jury, which awarded Barker $1,800,000 in damages. The trial court reduced the award to

---

1. The Fund has filed a motion to strike a factual assertion from MAI's brief that it did not support with any citation to evidence, concerning the effect of one doctor's malpractice on the setting of malpractice insurance premiums, and which the Fund claims is inaccurate in any event. We grant the motion to strike. *See* Ind. Appellate Rule 46(A)(6)(a) and (8)(a) (setting forth rule that factual assertions in brief must be supported by references to the Record on Appeal or Appendix).

$1,500,000, in compliance with the Indiana Medical Malpractice Act limitation of $750,000 in damages per act of malpractice.

*Patel v. Barker*, 742 N.E.2d 28, 30 (Ind.Ct. App.2001), *trans. denied* (footnote deleted). We held that the trial court did not err in holding that Barker was entitled to recover a total of $1.5 million, or $750,000 for each "act" of malpractice by Dr. Patel. *Id.* at 33. We also held that the trial court did not err in denying Dr. Patel's motion for judgment on the evidence with respect to the claimed malpractice related to the suturing of Barker's colon. *Id.* at 34.

MAI's predecessor-in-interest had issued a malpractice policy to Dr. Patel that was in effect in 1993. It provided malpractice liability coverage in the amount of $100,000 per occurrence/$300,000 per year, as required to make Dr. Patel a "qualified health care provider entitled" to the protections of the Act under the versions of Indiana Code Sections 34–18–3–2 and 34–18–4–1 in effect at the time.[2] After our supreme court denied transfer in *Patel*, MAI filed a declaratory judgment action against the Fund, asserting that although we had held Barker was entitled to two maximum $750,000 recoveries, the Act only required MAI to pay the health care provider malpractice liability maximum of $100,000 in effect at the time of the surgery once, not twice. On cross-motions for summary judgment, the trial court entered summary judgment in favor of the Fund and held MAI was required to make two $100,000 payments, not one, on Patel's behalf to discharge his liability to Barker under the Act. MAI and Dr. Patel now appeal.[3]

### Analysis

▮ At the outset, we acknowledge the Fund's argument that MAI is estopped from litigating the issue of how much of the $1.5 million Barker is entitled to recover must be paid by MAI/Dr. Patel, and how much must be paid by the Fund, because of our decision in *Patel*. It is true that collateral estoppel bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent cause of action. *Slutsky v. Crews*, 713 N.E.2d 288, 291 (Ind.Ct.App.1999). Additionally, a liability insurer is precluded from relitigating an issue decided against its insured, "provided the insurer had notice of the litigation and an opportunity to control the defense." *Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856, 859 (Ind.Ct.App.1998). MAI does not argue that it lacked notice or an opportunity to control the litigation of Dr. Patel's first appeal.

We do not believe collateral estoppel is appropriate in this case. First, we observe that the judgment appealed in *Patel* solely held that Barker was entitled to recover $1.5 million. The decision did not specify how the judgment was to be paid, which is a crucial consideration in view of the unique arrangement by which medical malpractice judgments are paid partly by the health care provider/malpractice insurer and partly by the Fund. Second, we also observe that in the first appeal, Dr. Patel did in fact expressly make the argument that "the acts about which Barker complains constitute one 'occurrence' of malpractice under the Indiana Medical Malpractice Act. . . ." *Patel*, 742 N.E.2d at 31. This is essentially the same argument MAI

**2.** Section 34–18–4–1 now requires an individual health care provider to carry malpractice liability insurance in the amount of $250,000 per occurrence/$750,000 per year.

**3.** Although Dr. Patel has joined in this appeal, it appears MAI prepared the brief in this case. Hence, we will refer to the brief and arguments as MAI's throughout this opinion.

makes today. However, this court declined to consider Dr. Patel's argument that his two acts constituted one "occurrence" of malpractice. Instead, we limited our discussion to the meaning of "an act" of malpractice and expressly said "that the meaning of 'occurrence' is not the dispositive issue here." *Id.* at 32. Given the manner in which we chose to frame the issue in the first appeal, we conclude that MAI is not precluded today from arguing whether its insured, Dr. Patel, is liable for $100,000 or $200,000 of the $1.5 million judgment in Barker's favor.

Our standard of review for a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003). Review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Reeder*, 788 N.E.2d at 1240. This case solely concerns the proper interpretation and construction of a statute and does not involve any disputed facts; thus, the case presents a pure question of law for which disposition by summary judgment is appropriate.[4] *Indiana Patient's Compensation Fund v. Anderson*, 661 N.E.2d 907, 908 (Ind.Ct.App.1996), *trans. denied.*

If a statute is unambiguous, we may not interpret it but must give the statute its clear and plain meaning; if a statute is ambiguous, we must ascertain the legislature's intent and interpret the statute to effectuate that intent. *Robinson v. Gazvoda*, 783 N.E.2d 1245, 1249–50 (Ind.Ct.App. 2003), *trans. denied.* "A statute is ambiguous if it is susceptible to more than one reasonable and intelligible interpretation." *Id.* at 1250. If interpretation is necessary, the express language of the statute controls and the rules of statutory construction apply. *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind.2003). We are required to determine, give effect to, and implement the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Id.* "In so doing, we should consider the objects and purposes of the statute as well as the effects and repercussions of such an interpretation." *Id.* The legislative intent governing the provision as a whole prevails over the strict literal meaning of any word or term. *Id.*

The legislature passed the Act in 1975 in response to a health care crisis in this state that was blamed in significant part upon increasing malpractice liability exposure for health care providers and their insurers. *See, e.g., Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 379–80, 404 N.E.2d 585, 589–90 (1980), *abrogated on other grounds by Collins v. Day*, 644 N.E.2d 72 (Ind.1994). Some of the alterations to traditional medical malpractice actions introduced by the Act included the requirement that a potential plaintiff submit his or her claim to a medical review panel before filing suit, the imposition of a strict two-year "occurrence-based," rather

---

4. We observe that this case is not a coverage dispute between Dr. Patel and MAI based upon the specific language of MAI's malpractice policy, at least on appeal. Rather, the issue presented is whether Dr. Patel and his insurer, MAI, are jointly required to pay the $100,000 maximum once or twice under the language of the Act. The trial court issued a specific holding that MAI is required to cover Dr. Patel in the amount of $200,000, not $100,000, under its policy with Dr. Patel. On appeal, MAI makes no argument that even if Dr. Patel himself is liable for $200,000, it is only required to cover $100,000 of that amount.

than "discovery-based," statute of limitations, and, relevant to this case, the imposition of a cap on damages a plaintiff may recover, combined with the creation of the Fund and the splitting of the payment of damages between a health care provider and the Fund.

Specifically, Indiana Code Section 34–18–14–3 as now written provides:

(a) The total amount recoverable for an injury or death of a patient may not exceed the following:

(1) Five hundred thousand dollars ($500,000) for an act of malpractice that occurs before January 1, 1990.

(2) Seven hundred fifty thousand dollars ($750,000) for an act of malpractice that occurs:

(A) after December 31, 1989; and

(B) before July 1, 1999.

(3) One million two hundred fifty thousand dollars ($1,250,000) for an act of malpractice that occurs after June 30, 1999.

(b) A health care provider qualified under this article (or IC 27–12 before its repeal) is not liable for an amount in excess of two hundred fifty thousand dollars ($250,000) for an occurrence of malpractice.

(c) Any amount due from a judgment or settlement that is in excess of the total liability of all liable health care providers, subject to subsections (a), (b), and (d) [concerning respondeat superior liability], shall be paid from the patient's compensation fund under IC 34–18–15.

At the time of Barker's surgery, a health care provider's liability under subsection (b) "for an occurrence of malpractice" was limited to $100,000; the $250,000 limit was added in 1998. *See* P.L.111–1998, § 14. Thus, Section 34–18–14–3 provided in 1993 that the total amount a patient could recover for "an injury or death" resulting from "an act of malpractice" was $750,000; the negligent health care provider was required to pay up to $100,000 "for an occurrence of malpractice" but no more, and the Fund was (and is) required to pay any recoverable amount not paid by the health care provider or insurer.

At this point in the litigation, there is no dispute that while performing surgery on Barker, Dr. Patel twice breached the appropriate standard of care and inflicted two separate and distinct injuries on Barker by (1) ineffectually suturing her colon and (2) leaving a hemoclip attached to her ureter. These two breaches necessitated two subsequent surgeries. Additionally, as established by our decision in *Patel,* Barker is entitled to recover $1.5 million for these injuries, or one $750,000 maximum statutory recovery for each injury. MAI essentially asks us to shift the entire cost of the second act of malpractice Dr. Patel committed to the Fund by only making one $100,000 maximum health care provider payment. It claims that the surgery Dr. Patel performed on Barker was a single "occurrence of malpractice," regardless of the number of injuries inflicted and negligent acts committed during the surgery by Dr. Patel.

We very recently held that Section 34–18–14–3 is "unambiguous." *McCarty v. Sanders,* 805 N.E.2d 894, 898 (Ind.Ct.App. 2004). However, we do identify an unfortunate ambiguity in the statute in the context of this case. When referring to the total amount a patient may recover from all sources for an injury or death, Section 34–18–14–3(a) refers to the amount recoverable for "an act of malpractice...." When referring to the total amount for which a health care provider may be liable, Section 34–18–14–3(b) refers to "an occurrence of malpractice." The use of two different words, "act" versus "occurrence," does lend credence to the possibility that

the legislature intended the two words to have different meanings, or that a single "occurrence of malpractice" may include more than one "act of malpractice." We do not accept such a construction. Although MAI urges otherwise, we conclude it could not have been the intent of the legislature to shift costs from a health care provider/malpractice insurer to the Fund in a case such as this. There are two primary reasons for this conclusion.

First, MAI's urged result would undermine fundamental principles of tort law. It is axiomatic that a defendant is liable for breach of a duty of reasonable care owed to a plaintiff that proximately results in compensable injury. *See Bader v. Johnson,* 732 N.E.2d 1212, 1217 (Ind. 2000). The Act, while placing strict restrictions on bringing a malpractice action and limiting the amount of available recovery, did not abandon this principle or otherwise change the elements of a malpractice negligence action against health care providers. It still holds health care providers liable for negligence that results in injury. In fact, as the Fund points out, our supreme court has expressly held that despite the Act, "[m]edical malpractice actions are no different from other kinds of negligence actions regarding that which must be proven." *Id.* at 1216–17. We also observe that because the Act is in derogation of common law, it must be strictly construed. *Patel,* 742 N.E.2d at 31. When the legislature enacts a statute in derogation of common law, we presume that the legislature does not intend to make any change beyond what is declared in express terms or by unmistakable implication. *Weldon v. Universal Reagents, Inc.,* 714 N.E.2d 1104, 1107 (Ind.Ct.App. 1999).

Here, Dr. Patel twice breached a duty owed to Barker and inflicted two readily distinguishable injuries to two different bodily systems. "In tort actions generally, all damages directly related to the wrong and arising without an intervening agency are recoverable.... In negligence actions specifically, the injured party is entitled to damages proximately caused by the tortfeasor's breach of duty." *Id.* at 1220. Additionally, it goes without saying that in the ordinary case, the tortfeasor (or the insurer) is the party required to pay the damages. The Act, and specifically the Fund, changes this equation to a degree in that the Fund will pay damages caused by a health care provider's malpractice that exceed a certain amount. However, we perceive no legislative intent to completely absolve a health care provider of liability for committing multiple, separate acts of malpractice that result in separate, distinct, and compensable injuries, albeit during the course of a single medical procedure. Dr. Patel, and by necessity MAI, must be held liable for those two breaches and injuries, in accordance with longstanding common law that we conclude was not altered by the Act.

Second, we believe that construing the phrase "an occurrence of malpractice" to be the functional equivalent of "an act of malpractice" for purposes of determining a health care provider's maximum liability in this particular factual scenario is consistent with the case law addressing Section 34–18–14–3. We have held that even where two separate and distinct acts of malpractice are established, a patient or survivor is only entitled to one maximum statutory recovery if the multiple acts of malpractice only resulted in one injury or death. *St. Anthony Medical Center v. Smith,* 592 N.E.2d 732, 739 (Ind.Ct.App. 1992), *trans. denied; Bova v. Roig,* 604 N.E.2d 1, 3 (Ind.Ct.App.1992). We so held based on the language of Section 34–18–14–3(a) (then Section 16–9.5–2–2(a)) imposing a maximum recovery limit for "any

■

injury or death...."[5] *Smith,* 592 N.E.2d at 739; *Bova,* 604 N.E.2d at 3. We also held in both cases that the health care providers in each case were only required to make one maximum statutory payment of $100,000 for each injury, regardless of the number of acts of malpractice involved. *Smith,* 592 N.E.2d at 739; *Bova,* 604 N.E.2d at 3. In so doing, we stated that subsection (b)'s limitation on an individual health care provider's liability "for an occurrence of malpractice" must be read in conjunction with subsection (a)'s limitation on the total amount recoverable "for any injury or death." *Smith,* 592 N.E.2d at 739; *Bova,* 604 N.E.2d at 3.

In *Miller v. Memorial Hosp. of South Bend,* 679 N.E.2d 1329 (Ind.1997), our supreme court addressed a scenario in which two different health care providers committed two separate acts of malpractice that inflicted separate and distinct prenatal and postnatal injuries on an infant. The court cited *Smith* and *Bova* with approval for the proposition that the Act "authorizes only one recovery in those cases where a single injury exists, irrespective of the number of acts causing the injury." *Id.* at 1331. It also stated: "Conversely, there is no dispute that, if there are two separate and distinct injuries caused by two separate *occurrences* of malpractice, the statute does not preclude two separate recoveries (each separately limited in accordance with the Act)." *Id.* at 1332 (emphasis added). Thus, the court in *Miller* appeared to treat the word "occurrence" as interchangeable with "act" when discussing Section 34–18–14–3 of the.

Act.[6] It went on to hold that the injured infant was entitled to two maximum statutory recoveries for the two distinct injuries caused by two distinct acts of malpractice, but it did not address the liability of each health care provider. *Id.*

In *Patel,* of course, we expanded upon *Miller* to hold that a patient suffering multiple distinct injuries caused by multiple acts of malpractice by a single health care provider during a single medical procedure is entitled to a maximum statutory recovery for each such injury. *Patel,* 742 N.E.2d at 33. Again, we did not address how much of Barker's total recovery was Dr. Patel's responsibility.

■ This court recently addressed yet another rare factual scenario in the context of Section 34–18–14–3. In *McCarty v. Sanders,* 805 N.E.2d 894 (Ind.Ct.App. 2004), we analyzed consolidated cases in which a single act of medical malpractice resulted in multiple injuries to multiple patients; each case concerned injuries to an infant and mother caused by a single negligent act by a health care provider. In that case, we affirmed the trial court's determination that (1) each injured patient was entitled to recover the maximum statutory amount under Section 34–18–14–3(a), but (2) each negligent health care provider was only required to make one maximum health care provider payment under Section 34–18–14–3(b), regardless of the number of injuries or injured patients. *Id.* at 898–99. The *McCarty* panel reasoned as follows:

**5.** As we noted in *Patel,* the statute now reads "*an* injury or death," which we did not believe effected any substantive change. *Patel,* 742 N.E.2d at 33 n. 2 (emphasis in original).

**6.** Our supreme court has used "occurrence" interchangeably with "act" when discussing medical malpractice in other contexts. *See Martin v. Richey,* 711 N.E.2d 1273, 1279–80

(Ind.1999) (noting that the Act's statute of limitations is an "occurrence" rather than "discovery" statute, "that is, a statute of limitations which commences running at the time of the act of malpractice rather than from the date on which the malpractice is discovered.").

Subsection (b) limits the amount that a health care provider has to pay for an "occurrence of malpractice." The plain meaning of "occurrence," a term not defined by the Act, is "act or instance of occurring," "happening," "event," "episode," or "incident." The American Heritage College Dictionary at 944 (3d ed.1993). An occurrence of malpractice is the actual act itself, not the resulting injury. The legislature could have chosen to require a health care provider to pay up to $100,000.00 for each "injury or death of a patient" resulting from an occurrence of malpractice, but it clearly did not do so.

*Id.* at 899. We are largely in agreement with this language, except to question making too much of a distinction between an "occurrence of malpractice" and "the resulting injury." To be an actionable "occurrence of malpractice," a health care provider's negligent act must proximately result in injury; the existence of injury is an "indispensable element" of any negligence claim. *See Bader,* 732 N.E.2d at 1218. Nonetheless, we fully concur with *McCarty* that the plain meaning of "occurrence" is that it is the equivalent of an "act" or "incident."

 *Smith, Bova, Miller, Patel,* and *McCarty* have established the following: (1) a patient who suffers only one compensable injury, regardless of the number of negligent acts causing that injury, is entitled to only one maximum statutory recovery; (2) a doctor who commits more than one negligent act in treating a patient is only liable for one maximum statutory payment if only one compensable injury results; (3) a patient who suffers two or more distinct injuries from two or more negligent acts by one or more health care providers is entitled to the maximum statutory recovery for each injury; and (4) a doctor who commits only one act of malpractice, yet causes more than one compensable injury to more than one patient, is still only liable for one maximum statutory payment.

 In our view, the most logical extension of these holdings is that a doctor who commits two or more negligent acts in treating a patient and thereby causes two or more distinct injuries is liable for the maximum statutory payment for each compensable injury. Each distinct act of malpractice resulting in a distinct injury is "an occurrence of malpractice" under Section 34–18–14–3(b) for which a health care provider is liable up to the maximum amount. We can conceive of no reason in this case to divorce subsection (a), governing the total amount an injured patient may recover, from subsections (b) and (c), which divvies up how and by whom that recovery will be paid for—i.e., the first $100,000 (now $250,000) by the health care provider/insurer, and the remainder by the Fund. When a patient suffers a compensable injury due to malpractice, the patient and the Fund reasonably should expect the health care provider to pay his or her statutory share for each separate injury caused by separate acts of malpractice, regardless of the temporal proximity of those acts.

 Perhaps the best way to address the variations on the multiple negligent acts/multiple injuries factual scenarios and provide guidance in future cases is to give a definition of "occurrence" that is consistent with plain meaning, the purposes of the Act, and the cases from this court and our supreme court: "an occurrence of malpractice" under Section 34–18–14–3(b) is the negligent act itself plus the resulting injury, with a health care provider's liability limited to the lowest common denominator between act and injury. That is, if there is only one act but two injuries, there can only be one "occurrence" and

health care provider payment; if there are two acts but only one injury, there can only be one "occurrence" and health care provider payment; if there are two distinct acts and two distinct injuries, there can be two "occurrences" and health care provider payments.

MAI suggests throughout its brief that requiring it to pay $100,000 for each act of malpractice Dr. Patel committed, which led to distinct injuries, will frustrate the overarching intent of the Act to limit malpractice liability, lower malpractice insurance rates, and thereby ensure access to healthcare by more Hoosiers. It reminds this court of the spiraling costs in Indiana of malpractice insurance and, therefore, health care generally that prompted the Act's passage, as recounted in *Johnson v. St. Vincent Hospital,* 273 Ind. at 379–80, 404 N.E.2d at 589–90. We do not accept that our decision today will lead to the "horribles" that preceded the passage of the Act or, given the evident uniqueness of the facts of this case, that it will have a significant impact "on the cost and availability of medical malpractice insurance in the State of Indiana...." Appellant's Br. p. 21. The Act has been in existence now for almost thirty years. Today presents the first case addressing whether a doctor and his or her insurer are required to pay twice for two separate acts of malpractice occurring during one medical procedure that has resulted in two distinct injuries. Either such payments have been made in the past without complaint, or this type of event would appear to be exceedingly rare. We also decline to accept that limiting malpractice exposure for health care providers and their insurers is the only relevant consideration when interpreting a provision of the Act. That is a factor, of course, when considering questions arising under the Act, but it must be balanced in this case against the need to fairly apportion the cost of malpractice when and if it

occurs and to ensure recovery by injured patients.

## Conclusion

The trial court correctly concluded that Dr. Patel and MAI are required to make two maximum health care provider payments totaling $200,000 to discharge their liability to Barker pursuant to Indiana Code Section 34–18–14–3(b). We affirm the grant of summary judgment in the Fund's favor.

Affirmed.

CRONE, J., and MATHIAS, J., concur.