If a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of two hundred fifty thousand dollars ($250,000), and the claimant is demanding an amount in excess of that amount, the following procedure must be followed:
(1) A petition shall be filed by the claimant in the court named in the proposed complaint, or in the circuit or superior court of Marion County, at the claimant's election, seeking:
(A) approval of an agreed settlement, if any; or
(B) demanding payment of damages from the patient's compensation fund.
(Emphasis added.)
[14] The parties dispute the meaning of the phrase "agreed to settle" in the statute, which presents an issue of first impression for this Court. Dr. Hossler maintains that, because he offered to settle his liability for $250,000, Wallen was required by statute to accept that offer and proceed against the Fund to seek additional damages. But Wallen maintains that the statute only requires him to release Dr. Hossler and proceed against the Fund after Wallen has entered into a settlement agreement with Dr. Hossler, which has not yet occurred.
*146 [15] It is well settled that, if a statute is unambiguous, we may not interpret it but must give the statute its clear and plain meaning. Med. Assur. of Ind. v. McCarty , 808 N.E.2d 737, 741 (Ind. Ct. App. 2004). Moreover, "in interpreting a statute, we must consider not only what the statute says but what it does not say." Curley v. Lake Cty. Bd. of Elections & Registration , 896 N.E.2d 24, 37 (Ind. Ct. App. 2008), trans. denied. In other words, "we are obliged to suppose that the General Assembly chose the language it did for a reason." State v. Prater , 922 N.E.2d 746, 750 (Ind. Ct. App. 2010), trans. denied. Further, we note that, "because the Act is in derogation of common law, it must be strictly construed." Med. Assur. of Ind. , 808 N.E.2d at 743. When the legislature enacts a statute in derogation of common law, we presume that the legislature does not intend to make any change beyond what is declared in express terms or by unmistakable implication. Id.
[16] Here, the parties agree that the statute is unambiguous, albeit to support opposing interpretations. We hold that the statute unambiguously sets out a procedure whereby a plaintiff, who has in fact settled with a defendant health care provider, may pursue excess damages from the Fund. Dr. Hossler would have us define "agreed to settle" to mean "offered to settle." But the legislature did not write the statute to say, "If a health care provider has offered a plaintiff $250,000, the plaintiff must accept that settlement offer and proceed against the Fund for excess damages." The statute clearly contemplates that a plaintiff shall proceed against the Fund only after the plaintiff has affirmatively entered into a settlement agreement with a defendant health care provider or insurer in lieu of trial. An offer is not an agreement. A settlement agreement requires at least two parties.
[17] In the alternative, Indiana Code Section 34-18-14-3(c) provides in relevant part that "[a]ny amount due from a judgment ... that is in excess of the total liability of all liable health care providers ... shall be paid from the [Fund]." Thus, a plaintiff is always entitled to reject a defendant health care provider's settlement offer and proceed to trial to determine his total damages, including damages to be paid by the Fund.
[18] Finally, we note that our courts have consistently addressed Indiana Code Section 34-18-15-3 as being applicable only in the event of an actual settlement agreement between the parties. For example, in Smith v. Pancner , our Supreme Court considered whether, under a former version of the statute,[4] an "agreement with a qualified provider who is one of multiple jointly liable providers is sufficient to [permit a plaintiff to] access the Fund." 679 N.E.2d 893, 896 (Ind. 1997). The Court's analysis included its determination that, under the statute, there is "no requirement that the parties cannot 'agree to settle' orally or only partially in writing." Id. at 895. And the Court stated that "it is clear that the Act contemplates the prospect that more than one provider may be liable for the same occurrence and may contribute to a settlement that gives access to the Fund. " Id. at 896 (emphasis added). In sum, throughout Smith , the Court makes clear that "agreed to settle" in the statute means that the parties must have entered into a settlement agreement before the plaintiff can access the Fund.
[19] Here, the trial court erred when it concluded that Dr. Hossler's "offer trigger[ed] the application of the process *147 set forth in" the statute and, in effect, that Wallen was required to accept Dr. Hossler's settlement offer. Appellant's App. Vol. 2 at 16. A settlement is, by definition, a voluntary agreement to resolve contested issues. In other words, a settlement cannot be compelled. That is especially true here, where Dr. Hossler's offer was encumbered by thirteen conditions, which were unacceptable to Wallen. Wallen may agree to settle with Dr. Hossler, or Wallen may choose to proceed to trial. Accordingly, we reverse and remand for further proceedings.
One or Two Statutory Caps
[20] The trial court also found that the "real issue in this case is the number of statutory caps that apply." Appellant's App. Vol. 2 at 16. Because this issue is likely to recur on remand, we address the trial court's conclusion that Dr. Hossler committed a single act[5] of malpractice which resulted in Cathy's death. The trial court resolved this issue as a matter of law, without having heard any evidence from either party.[6] Wallen asserts that whether Dr. Hossler committed two separate acts of malpractice that resulted in two separate injuries to Cathy is a question of fact for a jury. Accordingly, Wallen maintains that the trial court erred when it resolved this issue as a matter of law.
[21] It is well settled that the Act "allows for one recovery for each distinct act of malpractice that results in a distinct injury, even if the multiple acts of malpractice occur in the same procedure." Patel , 742 N.E.2d at 33. And, more specifically, "a doctor who commits two or more negligent acts in treating a patient and thereby causes two or more distinct injuries is liable for the maximum statutory payment for each compensable injury." Medical Assur. of Ind. , 808 N.E.2d at 745.
[22] Issues of negligence, causation, and reasonable care are generally a determination for a trier of fact. See Kader v. Dep't of Corr. , 1 N.E.3d 717, 726 (Ind. Ct. App. 2013). And in a medical malpractice proceeding, expert medical testimony is usually required to determine whether a physician's conduct fell below the applicable standard of care. Bader v. Johnson , 732 N.E.2d 1212, 1217 (Ind. 2000). Expert testimony is also generally required to prove proximate cause in medical malpractice actions. See Singh v. Lyday , 889 N.E.2d 342, 357 (Ind. Ct. App. 2008), trans. denied . It follows, then, that whether a physician committed multiple breaches of the applicable standard of care during his treatment of a patient that resulted in multiple, distinct injuries also typically requires expert opinion and a determination by a trier of fact.
[23] Here, however, Wallen has not alleged, and he cannot prove, that Dr. Hossler committed two distinct acts of medical malpractice. Wallen's claims arise from a single act by Dr. Hossler, namely, his interpretation of a CT scan of Cathy's abdomen. In response to Dr. Hossler's motion, Wallen characterized that single act as consisting of two acts of malpractice: a misdiagnosis and, separately, a failure to diagnose. In particular, Wallen argued that Dr. Hossler misdiagnosed Cathy as having *148 gallstones when he read the CT scan and he failed to diagnose the internal bleeding when he read the same CT scan.
[24] The factual predicate for a medical malpractice claim is a negligent act or omission. A single negligent act or omission supports a single malpractice claim and cannot support multiple claims where, for example, as here, the misdiagnosis and the failure to diagnose are not freestanding but arise from the same act or omission. We agree with the trial court that Dr. Hossler's alleged misdiagnosis and failure to diagnose comprise "one distinct act of negligence," namely, "misreading the [CT scan.]" Appellant's App. Vol. 2 at 17. Dr. Hossler's misdiagnosis and failure to diagnose, under the facts as alleged here, occurred simultaneously when he interpreted the CT scan and wrote his report. In contrast, in Patel , while the alleged malpractice occurred during one surgery, there were "two distinct acts of malpractice to two separate body systems, [the patient's] digestive system and her urinary system," and the acts occurred at different times during the surgery. 742 N.E.2d at 33. In particular, the defendant "fail[ed] to close her colon correctly and [left] a hemoclip in place" on her ureter. Id. at 31. Further, in Miller , two defendant providers each allegedly committed a separate, distinct act of malpractice-one that occurred while the patient was still in his mother's womb and one that occurred after his birth. 679 N.E.2d at 1332. Wallen does not cite to any Indiana case, and our research reveals none, where a single act by a health care provider was construed as two distinct acts of medical malpractice.
[25] In sum, Wallen attempts to create two distinct acts of malpractice out of a single act by Dr. Hossler-misinterpreting the CT scan-by alleging that he both misdiagnosed and failed to diagnose the internal bleeding. While, on another set of facts, a misdiagnosis and a failure to diagnose might constitute two distinct acts of medical negligence, in this case the two are one and the same. Here, assuming that the evidence will show that Dr. Hossler both misdiagnosed Cathy's condition and failed to diagnose her internal bleeding, we hold, as a matter of law, that Dr. Hossler committed a single act of medical malpractice when he misinterpreted the CT scan and wrote one report. Accordingly, the trial court did not err when it concluded that Wallen is not entitled to recover more than one statutory cap in his claims against Dr. Hossler.[7]
Conclusion
[26] Under the express provisions of the Act, Wallen may pursue excess damages from the Fund either after a jury trial or after he has entered into a settlement agreement with Dr. Hossler. Nothing in the Act requires Wallen to accept Dr. Hossler's offer to settle his liability. And, while whether a defendant health care provider has committed more than one act of medical malpractice is generally a question of fact, here, where Wallen's allegations cannot be construed as alleging more than one act, we hold as a matter of law that Wallen is only entitled to one statutory cap in his complaint against Dr. Hossler.
[27] Reversed and remanded for further proceedings.
Robb, J., concurs.
Baker, J., concurs in part and concurs in result in part with separate opinion.
Baker, Judge, concurring and concurring in result.
[28] I concur in the result reached by the majority and I fully concur in its analysis *149 regarding whether a settlement can be compelled. I respectfully part ways, however, with its analysis regarding the number of statutory caps at issue. In my view, there were two different acts of medical malpractice. But I do not think that it matters, inasmuch as there was only one injury-Cathy's death. Because it is without dispute that she sustained only a single injury, I agree with the majority that Wallen is not entitled to recover more than one statutory cap in his claims against Dr. Hossler.

Indiana Code Section 34-18-15-3 was formerly codified at Indiana Code Section 27-12-15-3 and included the same "agreed to settle" language relevant to the issue here.

Our courts treat the word "occurrence" as interchangeable with the word "act" in describing instances of medical malpractice. See Medical Assur. of Ind. , 808 N.E.2d at 744.

Wallen contends that the trial court, in essence, entered summary judgment in favor of Dr. Hossler on this issue, sua sponte . We cannot agree. Nothing in the record indicates that either the trial court or the parties considered Dr. Hossler's Motion to Enforce the Act to be a summary judgment motion. Indeed, neither party submitted evidence to the trial court.

Because we remand for further proceedings, we need not address Wallen's contention that the trial court erred when it did not award him prejudgment interest.