FILED

May 14 2020, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Gabriel A. Hawkins | Stacy F. Thompson |
| Indianapolis, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Frances L. Batchelder, Special
Administrator of the Estate of
John E. Batchelder, M.D.,
Deceased,

*Appellant-Plaintiff,*

v.

Indiana University Health Care
Associates, INC, d/b/a IUHP,

*Appellee-Defendant.*

May 14, 2020

Court of Appeals Case No.
19A-CT-2569

Appeal from the Marion Superior
Court

The Honorable Timothy Oakes,
Judge

Trial Court Cause No.
49D02-1808-CT-31406

**Tavitas, Judge.**

## Case Summary

[1]     Frances L. Batchelder, special administrator of the estate ("the Estate") of John
E. Batchelder, M.D. (the "Decedent"), appeals from the trial court's entry of

summary judgment in favor of Indiana University Health Care Associates, Inc. d/b/a IUHP ("IUHP") regarding the Estate's medical malpractice action. We reverse and remand.

## Issue

The sole issue on appeal is whether the trial court erred in granting IUHP's motion for summary judgment and finding that IUHP was entitled to judgment as a matter of law.

## Facts

The Decedent, who was a practicing cardiologist, was also a paraplegic. On September 25, 2015, a vehicle driven by Emma Mourouzis collided with the Decedent's vehicle on a Hamilton County roadway. The Decedent was transported to Indiana University Health North Hospital. An IUHP radiologist misread the Decedent's x-rays, failed to diagnose the Decedent's cervical spine fracture, and released the Decedent. On September 27, 2015, the Decedent sought a second opinion from another medical provider, who diagnosed the spine fracture and performed neurosurgery.

On April 19, 2016, the Decedent filed a complaint for damages against Mourouzis. The Decedent died on April 21, 2016. On June 17, 2016, the Estate filed an amended complaint for damages against Mourouzis. In the course of discovery, the Estate alleged total damages of "between six and ten million [dollars]." Tr. Vol. II p. 11. On March 13, 2017, Mourouzis settled all claims arising from the collision for $1.25 million.

[5] On June 14, 2017, the Estate filed a proposed complaint for damages with the Indiana Department of Insurance. A medical review panel "found that the [IUHP] radiologist . . . violated the standard of care" when he misread the Decedent's x-rays, regarded "an unstable cervical spinal fracture . . . . as a chronic injury that had been there for a long time[,]" and released the Decedent, when the Decedent's injury warranted immediate surgery. *Id.*

[6] On August 8, 2018, the Estate filed a wrongful death complaint against Indiana University Health, Inc., and IUHP, alleging that their provision of negligent medical care resulted in the Decedent's death.[1] On June 13, 2019, IUHP moved for summary judgment and argued that the Estate was not entitled to additional damages because: (1) the Indiana Medical Malpractice Act ("MMA") "cap[s]" the Estate's damages at $1.25 million; and (2) the Estate already obtained $1.25 million. IUHP's Br. p. 6.

[7] On July 9, 2019, the Estate filed a stipulation of dismissal as to Indiana University Health, Inc., which the trial court approved the same day. The trial court conducted a hearing on IUHP's motion for summary judgment on September 4, 2019. The Estate argued that the setoff for the $1.25 million Mourouzis settlement should be deducted from the total damages or the value of the case; whereas, IUHP argued that the $1.25 million setoff should be applied to the $1.25 million statutory limit, which would render the Estate's

---

[1] The jury trial was scheduled for April 2020.

claim moot. On October 18, 2019, the trial court granted IUHP's motion for summary judgment. The Estate now appeals.

## Analysis

The Estate argues that the trial court erred in entering summary judgment in favor of IUHP. Specifically, the Estate argues that: (1) setoff should be applied to the verdict; and (2) the trial court's decision to apply the Mourouzis settlement setoff to a possible judgment against IUHP "conflicts with controlling precedent as well as the policy considerations that gave rise to such precedent[.]" Estate's Br. p. 7. IUHP counters that a jury verdict in excess of the $1.25 million statutory cap must be reduced to the statutory cap prior to becoming a judgment; and "[o]nce reduced, the judgment should then be reduced by the amount of any payments received in settlement from another joint tortfeasor." Estate's App. Vol. II p. 26. IUHP maintains that, doing so, renders the Estate's claim against IUHP moot because the Estate has already recovered $1.25 million.

In reviewing a grant or denial of a motion for summary judgment, we "stand in the shoes of the trial court." *Murray v. Indianapolis Public Schools*, 128 N.E.3d 450, 452 (Ind. 2019) (quoting *Campbell Hausfeld/Scott Fetzer Company v. Johnson*, 109 N.E.3d 953, 955-56 (Ind. 2018)). We consider "whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law." *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016) (citation omitted); Ind. Trial Rule 56(C) (Summary judgment is appropriate if the designated evidence "shows that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law.").

[10] The party moving for summary judgment bears the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Goodwin*, 62 N.E.3d at 386; Tr. R. 56(C). The burden then shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id.* On appellate review, we resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom . . . in favor of the non-moving party." *Id.*

[11] This matter is a medical malpractice action for wrongful death and is subject to the MMA.

> The [MMA] allows a "patient or the representative of a patient" to bring a malpractice claim "for bodily injury or death." *Goleski v. Fritz*, 768 N.E.2d 889, 891 (Ind. 2002) (citing Ind. Code § 34-18-8-1). The [MMA] was designed to curtail liability for medical malpractice. It does not create substantive rights or new causes of action and, instead, "merely requires that claims for medical malpractice that are otherwise recognized under tort law and applicable statutes be pursued through the procedures of the [MMA]." The [MMA] provides that for an act of malpractice occurring after June 30, 1999[, and before July 1, 2017,] the total amount recoverable for an injury or death of a patient may not exceed $1,250,000. I.C. § 34-18-14-3. A qualified healthcare provider[ ] is liable for the initial $250,000 of damages, and the remainder of the judgment or settlement amount shall be paid from the [Patient Compensation] Fund. *Id.*

*Wallen v. Hossler*, 130 N.E.3d 138, 144 (Ind. Ct. App. 2019), *trans. denied*, (quoting *Atterholt v. Robinson*, 872 N.E.2d 633, 639-40 (Ind. Ct. App. 2007)) (footnote omitted).

[12]     The Estate alleges that Mourouzis and IUHP are joint tortfeasors whose acts or omissions caused the Estate to suffer injury—namely, the Decedent's death. The Indiana Comparative Fault Act, which replaced the common law defense of contributory negligence with a system for providing for the reduction of a plaintiff's recovery in proportion to the plaintiff's fault, "expressly exempted medical malpractice claims from its ambit[.]" *Indiana Dept. of Ins. v. Everhart*, 960 N.E.2d 129, 138 (Ind. 2012); *see Palmer v. Comprehensive Neurologic Services, P.C.*, 864 N.E.2d 1093, 1099-1100 (Ind. Ct. App. 2007), *trans. denied*. Thus, the historic common law rule of joint and several liability[2] "remains available to defendants in cases alleging medical malpractice." *Palmer*, 864 N.E.2d at 1099.

[13]     When the actions of multiple defendants cause a single injury to a plaintiff, a defendant against whom judgment is rendered at trial is entitled to a setoff against the assessed damages in the amount of any funds the plaintiff received from any settling joint tortfeasor. [ ] This credit is allowed in order to prevent a plaintiff from recovering twice for the same injury. As our Supreme Court outlined in [*Mendenhall v. Skinner & Broadbent Co.*, 728 N.E.2d 140, 141 (Ind. 2000)], Indiana courts have traditionally followed the "one satisfaction" principle, meaning that courts should take account of settlement agreements and credit the

---

[2] Under a theory of joint and several liability, "each defendant whose negligence contributed to the plaintiff's loss was liable for the entire amount of damages." *Shelton v. Kroger Ltd. Partnership I*, 58 N.E.3d 229, 233 (Ind. Ct. App. 2016).

funds received by the plaintiff through such agreements, *pro tanto*[3], toward the judgment against the co-defendants.

*Id.* at 1100-01 (emphasis in original) (citations omitted).

[14] Stated differently, "[u]nder the one satisfaction rule, where a plaintiff asserts that the wrongful acts of two or more joint tortfeasors caused a single injury, satisfaction of the loss by one tortfeasor releases all other joint tortfeasors." *Minix v. Canarecci*, 956 N.E.2d 62, 74 (Ind. Ct. App. 2011). The Restatement (Third) of Torts: Apportionment of Liability § 25(a) (2000) summarizes the one satisfaction rule as follows:

> *When a judgment includes a determination of the entirety of recoverable damages suffered by the plaintiff* for an indivisible injury and provides for their recovery by the plaintiff against one or more of the defendants, payment of the full amount of recoverable damages constitutes a satisfaction of the plaintiff's rights against all tortfeasors legally responsible for the plaintiff's indivisible injury.

> (emphasis added). Comment c to that section further provides that "[w]*hen a plaintiff obtains a judgment for all recoverable damages,* discharge of the judgment bars any further action against other potential tortfeasors. . . . *By obtaining the full amount of recoverable damages,* the plaintiff's legal rights are satisfied, and the plaintiff may not pursue any others for further recovery." (emphases added). *See also* Restatement (Second) of Judgments § 50 cmt. d (1982) ("[*W*]*hen a judgment is based on actual litigation of the measure*

---

[3] "Pro tanto" means "[t]o that extent; for so much; as far as it goes[.]" *See* BLACK'S LAW DICTIONARY (11th ed. 2019).

*of a loss,* and the judgment is thereafter paid in full, the injured party has no enforcible [sic] claim against any other obligor who is responsible for the same loss." (emphasis added)).

*Id.* at 74 (emphasis in original).

[15] *Palmer* and *Everhart* are the seminal cases pertinent to our review of the Estate's argument. In *Palmer*, medical providers—CNS and Dr. Muckway—diagnosed the decedent with multiple sclerosis, breached the standard of care regarding treatment of the decedent's seizures, and failed to diagnose the decedent's viral encephalopathy. After the decedent died, his widow, Palmer, sued the medical providers, as well as certain non-health care providers, on a theory of joint and several liability for medical malpractice resulting in the decedent's wrongful death. Palmer settled with the non-health care providers before the matter proceeded to trial against the two medical providers; the combined settlements from the non-health care providers exceeded $375,000.00.[4] The jury awarded Palmer $375,000.00 in damages. The two medical providers subsequently sought setoffs in the amounts that Palmer received in settlement from the non-health care providers, which the trial court granted. The trial court stated: "The jury having found for [Palmer] and against the [medical providers] in the amount of $375,000 *and the settlement contributions having exceed*[*ed*] *that amount*, the Court must deny [Palmer]'s Motions and enter a judgment [for] Plaintiff

---

[4] "The appeal was filed under seal, so the settling parties and the terms of their settlements [were] omitted from [our] opinion." *Palmer*, 864 N.E.2d at 1104 n.2.

and award damages of $0." *Palmer*, 864 N.E.2d at 1101 (emphasis added). On appeal, this Court affirmed, reasoning:

> . . . [T]he common law permitting setoffs remains, and the trial court [ ] in permitting setoff, determined that the settlement payments served as the same compensation of damages as the jury's verdict. *It is the trial court's duty to reduce jury verdicts by amounts received in settlement to ensure that a plaintiff not receive more than a full recovery. As the record in this case supports the trial court's conclusion that both the settlements and the verdict covered the injury of Mr. Palmer's death*, we cannot say that the trial court erred in determining that [the medical providers] met their burden . . . .

*Id*. at 1102 (emphasis added). The holding in *Palmer*, thus, reflected this Court's determination that Palmer received payment of the full amount of recoverable damages, which constituted satisfaction of Palmer's legal rights against the various joint tortfeasors.

[16]     In the same vein, in *Everhart*, the decedent was injured in a motor vehicle collision with a semi-truck owned by Standard Forwarding Company ("SFC"). A medical provider failed to administer a vital blood transfusion, and the decedent died. The decedent's survivors, Robin and Troy Everhart, sued the truck driver, SFC, and the medical provider for the decedent's wrongful death. The Everharts settled with SFC for $1.9 million and with the medical provider "for a lump-sum payment and future payment with a total present value of $187,001." *Everhart*, 960 N.E.2d at 132. The Everharts then sought excess damages from the Patient Compensation Fund ("PCF"). As noted above, Indiana Code Section 34-18-14-3 provides that a qualified healthcare provider is

liable for the initial $250,000.00 of damages, with the remainder of the judgment or settlement amount to be paid from the PCF. After a bench trial, the trial court found that the Everharts suffered damages of at least $3.15 million and awarded the PCF statutory maximum of $1 million to the Everharts. The PCF filed a motion for setoff, arguing that the $1.9 million settlement from SFC satisfied the Everharts' legal claims. The trial court denied the PCF's request to reduce the award.

[17]    In affirming the trial court, our Supreme Court observed: "The [trial] court found that [the Everharts'] total injuries exceeded the sum of all distinct, legally allowable awards of damages. A double recovery would therefore have been impossible under a correct application of the setoff rules." *Everhart,* 960 N.E.2d at 137. Further, our Supreme Court held:

> . . . [A] trial court has the power and duty to reduce a jury verdict by an amount already received in an earlier settlement to ensure that a plaintiff does not receive more than one recovery. Indeed, we had already held that when a jury returned a verdict against a jointly and severally liable defendant after another jointly and severally liable defendant had already settled in exchange for a covenant not to sue, a court should adjust *pro tanto* the amount of any damages determined by the jury verdict by subtracting any consideration received from the amount of any damages determined by the jury verdict.

> * * * * *

> Here, the PCF belatedly concedes that [the truck driver and medical provider] constitute joint tortfeasors. [The truck driver's] negligent driving and [the medical provider]'s negligent medical

care both caused a single indivisible harm: Everhart's death. Under the pure common law rule of joint and several liability, Robin could have sued either [the truck driver] or [the medical provider] and recovered from the defendant of her choice damages in the entire amount of the injuries she and Troy suffered. The second defendant, however, would have been entitled to a set-off from the total judgment against him in the amount of any settlement Robin reached with the first. Because the PCF assumes [the medical provider]'s liability over and above the statutory cap in the [MMA], the PCF is entitled to the same set-off and no more.

The trial court found that Robin and Troy suffered injuries of at least $3.15 million. . . . [T]he court should have reduced its finding on *total* injuries by $1.9 million on account of the settlement with [SFC]. The court should have further reduced that amount by another $250,000 on account of the settlement with [the medical provider]'s insurance company. The convenient result: $1 million in uncompensated damages, which is precisely equal to the statutory limit of the PCF's liability for excess damages.

* * * * *

The PCF concedes that [the medical provider] caused eighty percent of the plaintiffs' injuries. Because the only possible causes of Everhart's death are two known joint tortfeasors, however, this concession is tantamount to conceding that [SFC] caused the remaining twenty percent. Initially, the PCF would be responsible for $2,520,000 [or 80% of $3.15 million] in damages, whereas [SFC] would be responsible for $630,000 [or 20% of $3.15 million]. At most, the PCF would therefore only be entitled to a set-off on account of the settlement with [SFC] to the extent that it *exceeded* [SFC]'s liability. Giving the PCF the

benefit of this set-off in the amount of $1,270,000[5] and a further $250,000 set-off on account of the settlement with [the medical provider]'s insurance company would still leave a remaining $1 million [$2,520,000 - $1,270,000 - $250,000] in uncompensated damages for the PCF to cover in excess damages payable to Robin and Troy.

Reducing the finding on injuries by twenty percent and *then* subtracting the *full* $1.9 million from the remainder, and then another $250,000, as the PCF asks, effectively ignores that [SFC], not Robin and Troy, should bear the remaining loss. Indeed, doing so would magically wipe out $630,000 of Robin and Troy's total recovery and leave the PCF with a windfall in the same amount. In essence, the PCF would succeed in turning the one-satisfaction doctrine from a shield into a sword. The purpose of the one-satisfaction doctrine is to prevent a plaintiff from realizing *more* than one recovery. It is plainly not to reduce a plaintiff to realizing *less* than one full recovery.

*Id.* at 138, 139-40 (citations and footnotes omitted) (emphasis in original). The *Everhart* Court, thus, upheld the Everharts' $1 million excess damages award because the Everharts did not receive the full amount of recoverable damages from SFC and, therefore, were entitled to seek excess damages from the PCF in pursuit of the "one satisfaction" to which they were entitled.

[18] Here, in its order granting summary judgment for IUHP, the trial court found: "[T]here are no genuine issues as to any material fact, and [IUHP] is entitled to

---

[5] SFC caused twenty percent of the Everharts' damages or $630,000.00; however, SFC settled with the Everharts for $1,900,000. Thus, the *Everhart* court applied a setoff of $1,270,000.00, or the difference between the amount of SFC's settlement and SFC's liability.

judgment as a matter of law[.]" Estate's App. Vol. II p. 11. The record reveals that, at the hearing on IUHP's motion for summary judgment, the Estate asserted that "the value of this case is between six and ten million [dollars]." Tr. Vol. II p. 11. Counsel for the Estate further argued:

> [M]y first argument, Your Honor, is that the overall value of this case needs to be established first, that the issue is not ripe for decision-making because we don't know what the value is. We know what the facts are and the allegations are. [Mourouzis] and [IUHP] are joint tortfeasors in this case. And the court in *Everhart* [ ] talks about the one satisfaction rule, and that is you can have joint tortfeasors but you can't collect more than the case is worth. That's the issue and that has been the law in Indiana forever, that you can't collect more than the value of the case. My point is we don't know the value of this case till we try it. This is way premature to try to establish the value of the case now before it's even been tried.

*Id*. at 12-13.

[19] The *Palmer* and *Everhart* decisions highlight a crucial omission in the instant case. In those cases, the jury or trial court determined the value of the case or the entirety of the recoverable damages incurred by the plaintiffs before the trial court applied any setoffs. *See Palmer*, 864 N.E.2d at 1101 ("The jury having found for [Palmer] and against the [medical providers] in the amount of $375,000 . . . ."); *see Everhart*, 960 N.E.2d at 139 ("The trial court found that Robin and Troy suffered injuries of at least $3.15 million.").

[20] In the instant case, however, the trial court applied the setoff without first determining: (1) the value of the case or the extent of the Estate's injury; and (2)

whether the Mourouzis settlement satisfied the Estate's injury and made the Estate whole. Forgoing this threshold determination, the trial court found that the Mourouzis settlement satisfied the Estate's losses such that the Estate was not entitled to pursue additional damages from IUHP. We have found no support for this conclusion.

[21] Assuming arguendo that the Estate correctly valued its injury at between six and ten million dollars: (1) the $1.25 million Mourouzis settlement left remaining several million dollars in uncompensated damages and did not make the Estate whole; (2) the Estate would be entitled to seek the remaining balance of the uncompensated damages, up to an additional $1.25 million, from IUHP and the PCF; and (3) there would be no danger of the Estate receiving a double recovery because, as the *Everhart* Court found, even if the Estate received an additional $1.25 million from IUHP, the combined Mourouzis and IUHP settlements would still fall short of the Estate's "one satisfaction."

[22] By prematurely applying the Mourouzis setoff to the statutory limit and offsetting the IUHP judgment to zero, without first determining the value of Estate's case, the trial court denied the Estate the potential full recovery to which it is legally entitled. *See Everhart*, 960 N.E.2d at 140 ("The purpose of the one-satisfaction doctrine is to prevent a plaintiff from realizing *more* than one recovery. It is [ ] not to reduce a plaintiff to realizing *less* than one full recovery."). Accordingly, we find that genuine issues of material fact exist; and, thus, as to the amount of damages, IUHP was not entitled to judgment as a matter of law.

For these reasons, the trial court erred in granting IUHP's motion for summary judgment and finding that IUHP was entitled to judgment as a matter of law; we must, therefore, reverse the entry of summary judgment in favor of IUHP and remand for further proceedings.

## Conclusion

The trial court erred in granting IUHP's motion for summary judgment. We reverse and remand.

Reversed and remanded.

Najam, J., and Vaidik, J., concur.